**UNITED STATES of America,
Appellant,**

v.

**Anthony COLOMBO,
Defendant-Appellee.**

**No. 365, Docket 85–1329.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 27, 1985.

Decided Nov. 19, 1985.

\* Honorable Charles M. Metzner, United States District Judge for the Southern District of New

L. Kevin Sheridan, Asst. U.S. Atty. (Raymond J. Dearie, U.S. Atty., E.D.N.Y., Catherine E. Palmer, Asst. U.S. Atty., Edward A. McDonald, Attorney-in-Charge, U.S. Dept. of Justice, Organized Crime Strike Force, Michael A. Guadagno, Asst. Attorney-in-Charge, Organized Crime Strike Force, Brooklyn, N.Y., of counsel), for appellant.

Mark M. Baker, New York City (Barry Ivan Slotnick, Bruce Cutler, Jill G. Okun, Slotnick & Cutler, P.C., New York City, of counsel), for defendant-appellee.

Before PIERCE and PRATT, Circuit Judges, and METZNER, District Judge.\*

PIERCE, Circuit Judge.

This is an appeal from an order entered in the United States District Court for the Eastern District of New York, Jack B.

York, sitting by designation.

Weinstein, Chief Judge, directing the release of appellee Anthony Colombo pursuant to the Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.* (Act). Despite a finding that appellee Colombo presents a danger to the community, *see infra* p. 99, the district court, 616 F.Supp. 780 (E.D. N.Y.1985), concluded that bail and release conditions could assure the public's safety. *See* 18 U.S.C. § 3142(e). "A substantial additional basis" for the decision to release Colombo was the projected length of his pretrial incarceration which the district court determined must be considered in order for the detention provisions of the Act to withstand constitutional attack. We hold that the district court erred in its decision to release Colombo and, at this stage of the proceedings, the possible length of Colombo's pretrial detention was not a proper basis for release. Accordingly, we reverse the order of the district court.

## BACKGROUND

On April 22, 1985, appellee Colombo and twenty-four other persons were named in a seventy-one count indictment. The indictment charges that from 1975 until April, 1985, Colombo operated a criminal enterprise known as the "Anthony Colombo crew" which committed state and federal crimes, including murder, robbery, narcotics violations, arson, extortion, threats, assaults, illegal gambling, bribery, interstate theft and transportation of stolen goods, extortion and mail/wire fraud. At a detention hearing held before Magistrate Chrein on April 29, 1985, the government, through a proffer, stated its intention to present evidence at trial to support the allegation that Colombo participated in and directed the "Colombo crew." The proffer primarily consisted of the anticipated testimony of one Anthony Ferrara that he was recruited to join the "crew" in late 1980. App. at 72. The government asserts that Ferrara would testify at trial that Colombo stated that he was the head of the "crew" and approved all criminal activity by its members; that he received a share of all the proceeds of the "crew's" criminal activities

and in return provided for their legal representation, *id.* at 72–73; that Ferrara attended organization meetings at which Colombo directed "crew" members to rob persons believed to be large-scale drug dealers and to distribute narcotics; that in at least two of the robberies the victims were assaulted; that Colombo approved the abduction of a supposed drug dealer, the assault of the manager of a car dealership, the extortion of a restaurant owner, and the attempted murder of a government informant; and that he was part of a conspiracy to rob passengers on an airline flight to Atlantic City. The government also proffered corroborative testimony by the alleged victims of the assault, extortion and attempted murder. Further, the proffered testimony of Ferrara concerning two alleged robbery conspiracies was corroborated by tapes of telephone calls in which Colombo allegedly participated. *Id.* at 77–93, 99, 102.

Based on this evidence, Magistrate Chrein found that the government proved by clear and convincing evidence that Colombo presents a "threat to the safety of the community." *Id.* at 150; *see id.* at 157. Consequently, the magistrate ordered Colombo's detention pursuant to 18 U.S.C. § 3142(e), but he invited an application for reconsideration of his order if Colombo remained detained due to the detention order for more than ninety days from the date of his arrest. On August 7, 1985, the trial had not yet commenced and the parties again appeared before Magistrate Chrein who confined his review of the detention order to "whether or not new evidence that was unavailable for my consideration at the earlier detention hearing attenuates the findings that I made that there is clear and convincing evidence that this defendant poses a threat to the community." App. at 174. Following the hearing, the magistrate ordered Colombo's release on the condition that he post bail in the amount of $500,000 to be secured by a deed to a home and sureties. He stated that "inasmuch as this defendant did not himself participate in any violent act and that inasmuch as the [de-

fendant's ability] to orchestrate violent actions is only moderately attenuated by his incarceration, that the purpose of the act, the protection of the public is not served by this defendant's incarceration. That is my only basis for changing my ruling." *Id.* at 220–21. The magistrate reasoned that Colombo's orchestration of the "crew's" criminal activities would not be hindered by imprisonment as he could as easily direct his alleged underlings in prison as at liberty. *Id.* at 216. The magistrate stayed the release order pending appeal by the government to the district court pursuant to 18 U.S.C. § 3145(a)(1).

Chief Judge Weinstein made several determinations on appeal. He ruled that the magistrate had jurisdiction to reconsider his own April 29th detention order. He determined that in reviewing a detention order, a district court may rely on the record developed before the magistrate in conducting its own independent review of the evidence, and he concluded that a second evidentiary hearing was not required although a court might, in its discretion, take additional evidence.[1] These rulings are not challenged on appeal and, in any event, we note that the parties stipulated that the record in the proceedings below was the evidence to be considered by the district court. App. at 232–33. The district court upheld the magistrate's release of Colombo, but based its decision on different grounds and ordered additional bail conditions.

The district court noted that the magistrate had found that the charges contained in the indictment were supported by probable cause; and that the charges relating to narcotics and to crimes of violence triggered the presumption that no condition or combination of conditions would assure the safety of the community. *See* 18 U.S.C. § 3142(e). Noting that the presumption shifts only a limited burden of production onto a defendant and not a burden of persuasion, *see United States v. Chimurenga,*

760 F.2d 400, 405 (2d Cir.1985) (citing *United States v. Jessup,* 757 F.2d 378, 381–84 (1st Cir.1985)), the district court determined that Colombo rebutted the presumption by coming forward with evidence that he was ill, had never been convicted of a crime, and lived far from the scene of his alleged crimes. The court upheld the magistrate's finding that the government sustained its burden of persuasion as to danger to the community, but nevertheless concurred with the magistrate's conclusion that the government had failed to establish by clear and convincing evidence that detention was necessary. Judge Weinstein rejected the magistrate's reasoning that since Colombo could conduct his criminal activity as easily from within jail as out, he should be released. He noted that:

> The statute does not require that the defendant himself commit acts of physical violence as a condition precedent to a detention order. Nor does the statute suggest that if a defendant has the ability to endanger the community vicariously from a prison cell through orders to his underlings detention is inappropriate. Leaders of criminal gangs who direct the commission of violent crimes by others can be detained prior to trial under the circumstances prescribed in the Act. A warden is in a position to inhibit criminal activities in jail by criminal overlords.

App. at 316.

Chief Judge Weinstein concluded, however, that while the monetary conditions set by the magistrate assured only Colombo's presence at trial, *id.* at 308, other conditions of release could assure the safety of the community. Furthermore, a "substantial additional basis for [the district court's] decision to confirm the Magistrate's decision to release the defendant is that the necessary delay in bringing the case to trial will require him to be incarcerated from 13 months to two years before a trial can be completed." *Id.* at 317. Ac-

---

1. The district court relied on *United States v. Leon,* 766 F.2d 77, 80 (2d Cir.1985); *United States v. Hazime,* 762 F.2d 34, 36–37 (6th Cir. 1985); and *United States v. Delker,* 757 F.2d 1390, 1394 (3d Cir.1985), in reaching its conclusion that a second evidentiary hearing was permissible, but not required by the Act.

cording to the district court's reasoning, the extended period of incarceration likely to eventuate in this complex multi-defendant case must be considered in order for preventive detention to withstand constitutional attack.

We hold that the release conditions set by the district court are inadequate to protect the community, and, in addition, that the release of Colombo predicated on anticipated length of incarceration is unwarranted at this stage of the proceedings.

## DISCUSSION

As this court has noted elsewhere, "[s]ection 3142 of the new Bail Reform Act dramatically changes prior law by including 'the nature and seriousness of the danger to the community that would be posed by the person's release' as a factor to be considered in determining conditions of pretrial release, and by authorizing detention pending trial where 'no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" *Chimurenga,* 760 F.2d at 403 (quoting 18 U.S.C. § 3142(e), (g)(4)); *see United States v. Orta,* 760 F.2d 887, 890 (8th Cir.1985). Congress has expressed its concern about "the growing problem of crimes committed by persons on release," and the "small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community." S.Rep. No. 225, 98th Cong., 1st Sess. 6–7, *reprinted in* 1984 U.S.Code Cong. & Ad.News at 3182, 3188–89.

There is no question that both the magistrate and the district court determined that the evidence proffered at the April 29th hearing before Magistrate Chrein clearly and convincingly demonstrated that Colombo presents a danger to the community. *See* App. at 150 (magistrate found that government has proved by "clear and convincing evidence the facts that give rise to the risk to the public"); *id.* at 315 (district

court found that "it was appropriate for the magistrate to have found that the Government sustained its burden of persuasion as to probable cause and danger to the community"); *see also Chimurenga,* 760 F.2d at 403 (government has the burden of establishing defendant's dangerousness by clear and convincing evidence). They found that this evidence tends to show that Colombo was the leader of an enterprise that carried out its criminal activities at his direction. That there is virtually no evidence of Colombo's direct participation in the crimes charged is not surprising if one accepts the determination made for purposes of the bail hearings that Colombo played a leadership role in an organization allegedly known as "Colombo's crew." The magistrate correctly concluded at the April 29th hearing that "Ferraro's testimony might very well be believed by a jury. And if it were to be believed, there is an overwhelming array of testimony ... that the defendant presents a threat to the safety of the public, or consistent pattern of orchestrating a series of violent criminal operations." App. at 151.

We believe that the release conditions set by the district court offer little, if any, assurance that the danger Colombo was found to present to the public is controlled or diminished as contemplated by § 3142(e), and thus the district court's decision to release Colombo does not comport with the statute or its underlying congressional intent.

Chief Judge Weinstein's order of release adopted the monetary bail conditions fixed by the magistrate and, in addition, prohibited Colombo from (1) associating or communicating with any other named defendant prior to trial except as his lawyer certifies is necessary to prepare a defense; (2) appearing at the Eldoro Catering Company, his former place of employment and the alleged center of criminal activities; (3) committing any crime; (4) indirectly threatening a witness or causing harm to anyone named in the indictment or to any other person; (5) leaving Orange County except to attend court or consult his attorney; and (6) in addition, required that Colombo re-

port by telephone twice a week to the court's pretrial services unit, and surrender his passport.

In our view, these conditions are clearly inadequate to protect the public from one found for bail purposes to be a danger to the community. Prohibiting Colombo from associating with his co-defendants in no way prevents him from meeting with others who are members of a criminal enterprise. Prohibiting him from appearing at the Eldoro Catering Company does not prevent him from establishing a base elsewhere from which he might direct criminal activity. Prohibiting him from committing a crime or intimidating a witness does not at all impede his ability to do so, and requires no more of him than that which the law already demands from Colombo and every other citizen. No further protection is afforded by requiring reports by telephone twice weekly to the pretrial services unit and restricting Colombo to Orange County—these conditions may serve as inconveniences, but they do not hinder Colombo's alleged ability to supervise an illegal enterprise. Finally, the fact that Colombo must surrender his passport and post a bond tends merely to assure that he will not flee and does not relate to protection of the community. The particular danger that Colombo, for purposes of the bail determination, was found to pose—that of alleged supervisor and director of the "Colombo crew"—is hardly alleviated by the type of conditions established by the district court. In light of Congress' direction that "[w]here there is a strong probability that a person will commit additional crimes if released, the need to protect the community becomes sufficiently compelling that detention is, on balance, appropriate," S.Rep. No. 225 at 7; 1984 U.S.Code Cong. & Ad.News at 3189, we hold that the decision to release Colombo based upon conditions which we consider to be wholly inadequate was clearly erroneous. *See Chimurenga*, 760 F.2d 405 (applying clearly erroneous standard); *United States v. Williams*, 753 F.2d 329, 333 (4th Cir.1985) (same).

■ An alternative basis for the district court's decision to release Colombo was that the likely lengthy period of pretrial incarceration would violate his due process rights. At this stage of the proceedings, this determination, both as a statutory and constitutional matter, is premature. Reviewing the Act and its legislative history to determine whether there is any statutory foundation for Judge Weinstein's consideration of anticipated length of detention, it appears that Congress was not unconcerned with this issue, but relied on the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* (1983), to limit the period of pretrial incarceration. The Senate Judiciary Committee twice rejected a specific time period beyond which a defendant could not be incarcerated pretrial, such as the 60 day limit present in the District of Columbia's pretrial detention statute. In assessing preventive detention proposals, the Committee rejected one such amendment and explained that:

> One element of the District of Columbia Code Provision not carried forward ... is its 60-day limitation on the detention period.... 18 U.S.C. § 3161 [of the Speedy Trial Act] specifically requires that priority be given to a case in which a defendant is detained, and also requires that his trial must, in any event, occur within 90 days, subject to certain periods of excludable delay.... These current limitations are sufficient to assure that a person is not detained pending trial for an extended period of time.

*See* S.Rep. No. 225 at 22 n. 63, 1984 U.S. Code Cong. & Ad.News at 3205 n. 63.

The Speedy Trial Act's priority provision is aimed at ensuring that cases in which a defendant is detained will be tried expeditiously. *See* 18 U.S.C. § 3164. In its discussions on the Bail Reform Act, the Senate Judiciary Committee also rejected an amendment to this priority provision that would have altered the time period in which a pretrial detainee must be brought to trial from 90 to 60 days. One opponent stated that "[n]o evidence has been presented at any time in our hearings [on the Bail Reform Act] that the 90 day Speedy Trial Act limit has not worked perfectly well to protect against lengthy incarceration." 130 Cong.Rec. 938, 945 (Feb. 3, 1984) (Senator

Grassley). Two senators, in rejecting the proposed amendment, stated that the 90 day time period for bringing a case to trial under the Speedy Trial Act represented a "worst case limit," *id.* at 941 (Senator Thurmond), and an "upper bound," *id.* at 943 (Senator Laxalt), beyond which pretrial incarceration would not extend.

Clearly, under both the Bail Reform Act and the Speedy Trial Act, Congress was not indifferent to whether a defendant remained preventively detained for "an extended period of time" until his case could finally be tried. The above-quoted references demonstrate that Congress expected, when enacting the Bail Reform Act in 1984, that the Speedy Trial Act would protect against overlong periods of pretrial incarceration. However, experience under the combined operation of these two statutes may demonstrate that the realities of preparing for the trial of complex cases having numerous defendants and multi-count indictments are such that this congressional expectation and policy may occasionally be frustrated. Obviously, we are aware that in a case such as this, with an indictment containing seventy-one counts and naming twenty-five defendants, it is likely that the time periods excluded by 18 U.S.C. § 3161(h) from the speedy trial calculations will delay trial well beyond the 70-day maximum time for trial, and even beyond the 90-day "upper bound" for incarcerated defendants. Exclusions authorized by § 3161(h) for pretrial motions by both sides, scheduling difficulties as well as unforeseeable delays granted in the interests of justice, may combine to so delay a trial that the Speedy Trial Act might not "work perfectly well to protect against lengthy incarceration." In such a case, the length of a defendant's pretrial detention might not survive a proper due process challenge.[2] That case is not now before us. We do not know how much longer the trial will be delayed, or what circumstances may necessitate any additional delays. Moreover, at the time of oral argument, Colombo had not availed himself of the opportunity to move to expedite his trial or for a severance. We make no determination, therefore, whether substantial length of delay of the trial counsels for Colombo's release as a statutory or constitutional issue since it remains a speculative matter.

In short, we hold that the release of Colombo on the specified bail conditions was clearly erroneous and that release based on the speculative anticipated length of his pretrial incarceration was an abuse of discretion.

Reversed.

**2.** We are not confronted with, and do not reach, the issue of the constitutionality of predicating pretrial detention on the threat a defendant poses to the community. As one court has noted:

In light of the breadth of the legislation, in particular the profound transformation in the criminal justice system which undoubtedly will be engendered by the 1984 Act, there is a temptation to be resisted. The temptation is to seize on the present appeal as a vehicle to sketch with a broad brush the particular standards to be applied by district courts. More-over, as we begin a journey under any new law, a question naturally arises about whether our road will lead us into unconstitutional realms. These are all extremely important considerations, which at some juncture must be faced. However, the law *is* to be developed case-by-case, with concrete factual situations governing the development of otherwise broad principles of law. Here, we need not gallop frenetically about the countryside.

*Williams,* 753 F.2d at 333; *cf. Leon,* 766 F.2d at 81.