**UNITED STATES of America,**

v.

**Joseph DEFEDE, et al., Defendants.**

**No. 98 Crim. 373(LAK).**

United States District Court,
S.D. New York.

June 8, 1998.

---

**4.** *Ann Howard Designs, L.P.*, 992 F.Supp. at 692.

**5.** *Id.*

**6.** *See Ann Howard Designs, L.P.*, 992 F.Supp. at 690, 691.

Joseph Bianco, Assistant United States Attorney, Mary Jo White, United States Attorney, for U.S..

Stanley A. Teitler, LLP, New York, NY, for defendant Joseph Defede.

## MEMORANDUM OPINION

KAPLAN, District Judge.

The indictment in this case charges that Joseph Defede is a made member and, since late 1993 or early 1994, the acting boss of the Luchese organized crime family. Defede is charged with conspiring to conduct the affairs of the Luchese family, an alleged RICO enterprise, through a pattern of racketeering activity, with conspiracy to extort money and property from businesses in New York's garment center, and with five substantive extortion counts. Defede now seeks review, pursuant to 18 U.S.C. § 3145, of Magistrate Judge Peck's order that he be detained pending trial on the basis of Judge Peck's determinations that the defendant is charged with a crime of violence and, by clear and convincing evidence, that no condition or combina-

tion of conditions will reasonably assure the safety of other persons and of the community. Although Defede characterizes his application as an appeal, the Court treats the application as a motion to revoke or amend the order pursuant to 18 U.S.C. § 3145(b). In considering the application, the Court determines the matter *de novo*.[1]

The government's proffer before Judge Peck, which was clarified and expanded somewhat before the undersigned, in broadest outlines is as follows: The Luchese family is an organized crime family engaged in a large variety of illegal activities including, significantly for purposes of this case, long standing extortion from persons and entities doing business in the garment center. The family is headed by a "boss," who supervises its criminal activities and receives a cut of the illegal proceeds of his subordinates. The boss thus oversees and shares in the proceeds of the alleged extortion of garment center firms. During the period relevant to this application, the Luchese boss was Vic Amuso, who for some time has been serving a lengthy sentence in federal custody. In late 1993 or early 1994, Defede, a member of the family, allegedly was made the "acting" or "street" boss and began reporting to and receiving instructions from Amuso in frequent prison visits.

It is undisputed that the defendant is charged with a crime of violence and is subject to pretrial detention on an appropriate showing.[2] The government conceded before Judge Peck that Defede poses no flight risk. The only disputed question is whether the government established by clear and convincing evidence "that no condition or combination of conditions will reasonably assure the ... safety of any other person and the community...."[3]

There is ample basis for concluding that no condition or combination of conditions would adequately assure the public safety if Defede in fact is the acting head of the Luchese family, as the government's proffer as to the role of the head of the family and as to the

---

**1.** *United States v. Leon*, 766 F.2d 77, 80 (2d Cir.1985).

**2.** 18 U.S.C. § 3142(f)(1)(A).

**3.** *Id.* §§ 3142(e), 3142(f).

family's activities is uncontroverted. Both the Second Circuit and this Court have detailed the risk that the continued liberty of such a person poses and the adequacy of that risk as a basis for pretrial detention.[4] The pivotal issue therefore is whether there is sufficient basis for the Court to find that Defede is the acting boss to justify the necessary conclusion as to danger to public safety, an issue rendered all the more important by the government's concession that there is insufficient basis for pretrial detention of Defede unless it has shown by clear and convincing evidence that he is the acting boss of the Luchese family .[5]

### The Sufficiency of the Government's Showing

Defede's counsel denies that Defede is the acting boss of the Luchese family, although Defede presented no sworn proof. The government's proffer as to Defede's position as acting boss includes principally these elements:

First, it has indicated that Alphonse D'Arco, a former acting boss of the Luchese family who began cooperating with the government in or about 1991 and who testified for the government in *Bellomo* among other cases, will testify that he was present when Defede became a made member of the Luchese family upon the sponsorship of Vic Amuso.[6] D'Arco will testify further that, as act-

ing boss of the Luchese family, he was in charge of all its criminal activities, including extortion of the garment center, the construction industry, the garbage industry, gambling, loansharking and Kennedy airport, and that Defede was engaged in gambling and loansharking during D'Arco's tenure.[7]

Second, a number of as yet unidentified confidential sources, including at least one made member of the Luchese family, are said to have identified Defede as the acting boss or as holding a comparable leadership position during the relevant period.[8] At least one confidential source is said to have informed the FBI that Defede effectively served as the go-between, reporting to and receiving advice or instructions from Vic Amuso since the latter has been incarcerated.[9] Bureau of Prisons records confirm that Defede was a frequent visitor to Amuso. Amuso and Defede made efforts to avoid having their conversations during Defede's visits overheard.[10] Nevertheless, the government on one occasion succeeded in obtaining a poor quality recording which appears to support the view that Amuso and Defede discussed Luchese family criminal business.[11]

Third, there is circumstantial evidence linking Defede to collection of extortion payments from garment center businesses on a specific occasion in July 1996. The government's proffer, undisputed in this respect,

---

4. *E.g.*, *United States v. Orena*, 986 F.2d 628, 632 (2d Cir.1993); *United States v. Gotti*, 98 Crim. 42(BDP) (S.D.N.Y. Feb. 13, 1998) (bench opinion); *United States v. Bellomo*, 944 F.Supp. 1160, 1167 (S.D.N.Y.1996); *see also United States v. Salerno*, 481 U.S. 739, 744, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); *United States v. Colombo*, 777 F.2d 96, 100–01 (2d Cir.1985).

Contrary to Defede's argument, the government's detention argument in this case is not based on defendant's alleged status in violation of *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). *Robinson* holds that the Eighth Amendment prohibits punishment based purely oil status as distinct from actions. *Id.* at 667, 82 S.Ct. 1417. Here, on the other hand, it is well established that persons who hold Defede's status routinely engage in conduct that is a menace to public safety. The argument thus is based not on the status, but on the inference that a person in Defede's position is quite likely to engage in dangerous conduct—just as one reasonably could infer that one holding the position of major league baseball pitcher is

entirely likely to hurl a small white object in the direction of home plate.

5. Tr., June 2, 1998, at 47–48.

6. *E.g.*, McNair Aff. 6/2/95 ¶ 22; Tr. 6/2/98 at 33–34.

 D'Arco evidently will testify also to the overall criminal operations of the Luchese family including its extortion of garment center businesses in the period prior to D'Arco's agreement to cooperate with the government. DiGregorio 12/17/93 Aff. ¶ 21; Tr. 6/2/98 at 34.

7. Tr. 6/2/98 at 34.

8. *E.g.*, DiGregorio 12/17/93 Aff. ¶ 26; McNair 6/2/95 Aff. ¶¶ 26–27; McNair 7/14/95 Aff. ¶ 20.

9. DiGregorio 12/17/93 Aff. ¶ 28.

10. DiGregorio 1/14/94 Aff. ¶ 17.

11. *Id.*, ¶ 23; McNair 6/2/95 Aff. ¶ 46.

established that it was a routine practice for extortion payments to be delivered to defendant Schlacter who in turn handed the money over to a representative of the Luchese boss. On July 25, 1996, a man named Vuolo, who on another occasion was present while Schlacter was seen counting money on his desk,[12] met with Schlacter in his office. The sound of crinkling paper was heard. Vuolo then remarked, "Skinny, huh!" He then was observed closing a large envelope approximately 11 by 14 inches and said to Schlacter, "A quarter to two, I'll be in the back." Schlacter responded, "Fourth floor." Vuolo replied, "Yeah." [13]

Agents later observed Vuolo enter 1400 Broadway carrying a large yellow envelope similar to the envelope he closed in Schlacter's office.[14] Shortly thereafter, Schlacter left his office, walked to 1400 Broadway, entered the building, and was observed on the fourth and later the tenth floors.[15] Twenty seven minutes after Schlacter arrived, Defede entered 1400 Broadway and appeared to walk toward the same tenth floor premises to which Schlacter had gone.[16] Eight minutes later, Vuolo was observed in the building lobby without the yellow envelope.[17] A short time later, Defede exited 1400 Broadway with a large thick yellow envelope.[18] Schlacter left moments later.[19]

On the following morning, Schlacter was overheard speaking to a man named Schwartz. During the conversation, Schlacter protested that someone had said that he had been cheating. Schlacter continued, "I said Joe, I'm here a long time." Schwartz interjected, "You're one of them." Schlacter responded, "If anybody thought I cheated them before I'd be dead." [20]

Fourth, there is considerable evidence that law enforcement officers observed Defede meeting with various members and associates of the Luchese family in a manner common for leadership figures in organized crime.

Defede's position is simple. The statute, he argues, requires proof of danger by clear and convincing evidence. Proof of Defede's alleged position in the Luchese hierarchy, in light of the government's concession, is a *sine qua non* for a detention order. The government's proffer, which is unsupported by sworn testimony of anyone with personal knowledge of Defede's position, is met by Defede's unsworn and unsubstantiated denial. In this posture, says Defede, the detention order must fall for want of clear and convincing proof. The matter, however, is not as simple as Defede would have it.

The Bail Reform Act requires a hearing prior to the entry of a detention order.[21] It is considerably less explicit about the precise nature of the hearing, saying in relevant part only that the defendant "shall be afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise" and that the rules of evidence do not apply.[22] Nevertheless, it now is clear in this Circuit that the government as well as the defendant "may proceed by proffer," [23] which is implicit in the fact that the rules of evidence are inapplicable. "[T]he thrust of the legislation is to encourage informal methods of proof. Congress did not want detention hearings to resemble mini-trials...." [24]

The fact that the Bail Reform Act does not require an evidentiary hearing prior to the

---

**12.** Giacolone Aff. ¶ 67.

**13.** Giacolone Aff. ¶ 53.

**14.** *Id.* ¶ 54.

**15.** *Id.* ¶ 55–56.

**16.** *Id.* ¶ 57.

**17.** *Id.* ¶ 58.

**18.** *Id.* ¶ 59.

**19.** *Id.*

**20.** *Id.* ¶¶ 65–66.

**21.** 18 U.S.C. § 3142(f).

**22.** *Id.*

**23.** *United States v. Ferranti,* 66 F.3d 540, 542 (2d Cir.1995); *see United States v. Martir,* 782 F.2d 1141, 1144–45 (2d Cir.1986) (government may proceed by proffer as to risk of flight).

**24.** *Martir,* 782 F.2d at 1145.

issuance of any detention order of course does not mean that a court is free to detain a defendant by arbitrarily crediting an unpersuasive government proffer over an unsubstantiated proffer of denial by the defendant. The stakes in pretrial detention are too high. Here, for example, it is likely that Defede, if detained pending trial, will be deprived of his liberty for perhaps as long as ten months before a verdict can be reached.[25] But the government does not here seek detention on so thin a basis.

In this case, the government has made a detailed proffer, large elements of which are undisputed by the defendant and other portions of which are disputed only to the extent that he questions generally the credibility of government informants or challenges the inferences to be drawn from otherwise undisputed facts such as Defede's numerous jail house visits to Amuso and the significance of his emergence from 1400 Broadway with the yellow envelope. In fact, insofar as is relevant to the aspects of the government's proffer summarized above, Defede explicitly denies only that he is the acting boss of the Luchese family—and he does that only through an unsworn statement of counsel. In these circumstances—that is, where there is no specific denial under oath of the critical elements of the government's proffer—it seems to this Court that the Bail Reform Act permits the Court to assess the persuasiveness of the parties' proffers and make the necessary determination under the Act.[26]

This conclusion is supported by the cases. In *United States v. Smith*,[27] the District of Columbia Circuit, for example, upheld a detention order based on a finding of dangerousness rooted in the government's proffer despite the fact that the defendant took the witness stand and denied having committed the acts charged.[28]

This view finds support also in the fact that a criminal defendant is not entitled to an evidentiary hearing on a motion to suppress evidence absent the submission of an affidavit based on personal knowledge setting forth facts necessary to make out a *prima facie* case that the evidence was obtained in violation of the defendant's rights.[29] Surely the defendant's interest in suppression of the evidence in such a case may be every bit as great as that of a defendant faced with a pretrial detention application, as the outcome of the prosecution—and thus the defendant's liberty—may turn on the determination of the suppression issue. Yet the Court is unaware of any basis for concluding that a defendant may compel an evidentiary hearing simply by claiming, in an unsworn statement by counsel, that evidence was obtained illegally.

Nor is there much reason to believe that an evidentiary hearing would add materially to the information before the Court. The government has indicated that it would offer testimony by the agents whose affidavits already are before the Court in order to confirm through their hearsay testimony the statements allegedly made by the various cooperators and confidential sources.[30] Defede's counsel was non-committal as to

---

**25.** The trial is scheduled to commence on January 5, 1999. Counsel have estimated that it will last three months. The Court would be prepared to entertain an application by the defendants to advance the trial date.

**26.** *Cf., e.g., Holt v. Continental Group, Inc.*, 708 F.2d 87, 90 n. 2 (2d Cir.1983) (party resisting preliminary injunction that "elects to gamble on a 'battle of affidavits' must live by that choice"); *Consolidated Gold Fields, PLC v. Minorco SA*, 871 F.2d 252, 256, *amended on other grounds*, 890 F.2d 569 (2d Cir.), *cert. dismissed*, 492 U.S. 939, 110 S.Ct. 29, 106 L.Ed.2d 639 (1989) (same).

**27.** 79 F.3d 1208 (D.C.Cir.1996).

**28.** *Id.* at 1210–11. *See also United States v. Salerno*, 481 U.S. at 743, 107 S.Ct. 2095 (detention based on government proffer upheld despite defendant's challenge to credibility of proffered trial witnesses); *United States v. Gaviria*, 828 F.2d 667, 669 (11th Cir.1987) (upholding ruling precluding defendant from calling case agent to testify at bail hearing and affirming lower court's discretion to allow government to proceed by proffer).

**29.** *E.g., United States v. Gillette*, 383 F.2d 843, 848 (2d Cir.1967); *United States v. Ahmad*, 992 F.Supp. 682, 685 (S.D.N.Y.1998); *United States v. Bellomo*, 954 F.Supp. 630, 639 (S.D.N.Y.1997); *United States v. Montoya–Eschevarria*, 892 F.Supp. 104, 106 (S.D.N.Y.1995).

**30.** Tr. 6/2/98 at 51.

whether Defede would testify if a testimonial hearing were held.[31] Thus, if the government's proffer is sufficiently persuasive to overcome Defede's narrow, unsworn, and conclusory denial, there is no reason to hold a hearing.

The evaluation of the relative strength of the proffers in this case does not require extensive analysis. The government's evidence that Defede is the acting boss of the Luchese family comes from several different confidential sources, at least one of them a made member of the family who reasonably may be expected to have personal knowledge of Defede's status. The fact that Defede occupies such a position is corroborated at least by (1) his frequent visits to Amuso, which are far more likely to have been for the purpose ascribed by the government than for any other, (2) the highly suspicious nature of the one recorded prison conversation between the two, (3) the yellow envelope episode which is so suggestive of Defede having picked up the periodic garment center extortion payments long made to the Luchese boss or his representative, (4) Schlacter's recorded reference to his conversation with "Joe," one day after surveillance placed Schlacter, point man for the garment center extortion operation, and Defede at 1400 Broadway at the same time, concerning whether Schlacter was cheating someone and Schlacter's belief that he would have been killed had he been doing so, and (5) the surveillance evidence establishing Defede's frequent meetings with family members and associates in the manner now familiar to many federal judges who have presided over alleged Mafia trials. The fact that the head of the Luchese family is responsible for extensive criminal activity, which is not disputed by Defede, in any case is extensively corroborated by the government's proffer, including the proffered testimony of former Luchese boss D'Arco.[32] Against all this stands only the conclusory denial by Defede's counsel that Defede is acting boss, a denial that does not even address the corroborative evidence. On this record, the Court finds by clear and convincing evidence that Defede is the acting boss of the Luchese family. The acting boss of the Luchese family supervises all of its far-flung criminal activities, including acts of violence. Defede's continued liberty therefore presents a substantial danger to the public unless some condition or combination of conditions can provide adequate protection.

*Inadequacy of Conditions*

In considering the adequacy of conditions to safeguard the public, it is important to recognize that the threat inherent in Defede's continued liberty need not stem directly from the threat of violent acts by him.[33] Nor need it arise from the charged offenses.[34] Given Defede's position of leadership in a notorious and violent criminal organization, "his ability to plan, order, and supervise criminal activity" [35] is of paramount importance. Defede "is a danger at least as much for what he might direct or assist others in doing as for what he might do himself." [36] In consequence, for the reasons set forth in *Bellomo*,[37] both *Gotti* cases,[38] and in the Court of Appeals decisions in *Co-*

---

31. *Id.* at 54.

32. Although it is not necessary to the Court's determination of this motion, D'Arco's record suggests that he is quite reliable. D'Arco testified extensively before the undersigned in *United States v. Ida*, S1 96 Crim. 430(LAK), last year. His testimony was virtually the only evidence against Ida on the charge that Ida conspired to murder Ralph DeSimone and the principal evidence that he conspired to murder Hickey DiLorenzo. The jury convicted Ida of both charges and could not have done so unless it believed D'Arco's testimony. *See generally id.* Tr. 7/25/97 at 24–28 (denying Ida motion for judgment of acquittal on these counts).

33. *See, e.g., Ferranti,* 66 F.3d at 543 (citing *Colombo,* 777 F.2d at 98).

34. *See, e.g., United States v. Rodriguez,* 950 F.2d 85, 88 (2d Cir.1991); *Bellomo,* 944 F.Supp. at 1166.

35. *Bellomo,* 944 F.Supp. at 1167.

36. *Id.*

37. *Id.*

38. *United States v. Gotti,* 98 Crim. 42(BDP) (S.D.N.Y. Feb. 13, 1998) (bench opinion); *United States v. Gotti,* 776 F.Supp. 666, 672–73 (E.D.N.Y.1991).

*lombo*[39] and *Orena*,[40] this Court finds, by clear and convincing evidence, that no condition or combination of conditions adequately would secure the safety of the community.

### Conclusion

While certain of the factors set forth in 18 U.S.C. § 3142(g) favor the defendant,[41] the government's proof as to his danger to the community is convincing for the reasons shown above. Contrary to the defendant's assertions, it appears to the Court that the government has a strong case against him. The offense, extortion, is a crime of violence both because it is so defined by statute and because its completion often involves the threat of physical harm. For all of the foregoing reasons, Defede's appeal, which is treated as a motion to revoke or amend Magistrate Judge Peck's detention order, is denied. The order will remain in place.

SO ORDERED.

---

**39.** 777 F.2d at 99–100.

**40.** 986 F.2d at 632.

**41.** Defede, for example, has no prior record and has well established ties to the community.