UNITED STATES of America,

v.

Russell James BOORMAN, Defendant.

No. 00–CR–0159A, 00–CR–0185A.

United States District Court,
W.D. New York.

Feb. 20, 2001.

Sean Dennis Hill, Hill & McCready, Buffalo, NY, for Russell James Boorman, defendants.

Thomas S. Duszkiewicz, U.S. Attorney's Office, Buffalo, NY, for U.S. Attorneys.

## DECISION AND ORDER

ARCARA, District Judge.

### INTRODUCTION

On August 30, 2000, defendant Russell James Boorman was charged by a federal grand jury in a five-count indictment (00–CR–159A) with two counts of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1);

one count of possession with intent to distribute 10 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); one count of possession with intent to distribute a mixture or substance containing marijuana, in violation of 21 U.S.C. § 841(a)(1); and one criminal forfeiture count. These charges arise from certain alleged sales of controlled substances by the defendant to a confidential informant, while in the presence of an undercover law enforcement officer, in 1997.

Pursuant to an arrest warrant, defendant was arrested on September 12, 2000. During and subsequent to the arrest, law enforcement officers found defendant to be in possession of, *inter alia*, methamphetamine, certain precursor chemicals necessary for the manufacture of methamphetamine, over 100 marijuana plants, and a weapon. On the same day of the arrest, defendant was arraigned by United States Magistrate Judge Leslie G. Foschio. At that time, the government moved for detention of defendant pending trial, pursuant to 18 U.S.C. § 3142(f)(1)(C). The Pretrial Services Office also submitted a written report recommending that defendant be detained pending trial. At defense counsel's request, the detention hearing was adjourned until September 15, 2000.

The detention hearing commenced on September 15, 2000. At the hearing, the government proceeded by way of proffer. Following the government's proffer, defense counsel requested a continuance for the purposes of preparing a rebuttal to the government's proffer. The hearing was then continued until September 21, 2000. On that date, defense counsel asked for another continuance and the hearing was continued until September 28, 2000.

On September 28, 2000, defense counsel, proceeding by way of proffer, attempted to rebut the government's proffer. At the conclusion of the hearing, Magistrate Judge Foschio denied the government's motion for detention and set bail in the amount of $50,000, to be secured by a minimum of $25,000 cash or property. He also imposed certain other conditions and reporting requirements. The government indicated to the Magistrate Judge that it intended to appeal the release order to this Court and the Magistrate Judge therefore stayed defendant's release pending the appeal. The Magistrate Judge filed a release order on October 5, 2000, and the government's appeal was filed on October 10, 2000.

On October 11, 2000, defendant was charged in a second indictment (00–CV–185) with offenses arising from the drugs and weapon allegedly discovered to be in his possession at or around the time of his arrest on the first indictment. The four-count indictment charges defendant with one count of possession with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A); one count of possession with intent to distribute 100 or more marijuana plants, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); one count of possession of ephedrine with intent to manufacture methamphetamine, in violation of 21 U.S.C. § 841(d)(1); and one count of possession of a firearm in furtherance of drug trafficking crimes, in violation of 18 U.S.C. § 924(c)(1).

On October 17, 2000, defendant was arraigned by Magistrate Judge Foschio on the second indictment. The government again moved for detention of defendant pending trial and the Pretrial Services Office again submitted a written report recommending that defendant be detained. A hearing on the detention motion was held on October 25, 2000, at which time Magistrate Judge Foschio denied the government's detention motion and set bail at $250,000, to be fully secured by cash and property, with a minimum $25,000 cash. He also set certain other conditions and reporting requirements.

On October 31, 2000, a status conference regarding the government's appeal of the

release order on the first indictment was held in this Court. At that time, the government informed the Court about the second indictment and stated that it would also be appealing the Magistrate Judge's release order in that case. The Court set a briefing schedule for both appeals. The government's appeal on the second indictment was filed on November 3, 2000, and defendant filed an opposition thereto on December 1, 2000.

A *de novo* hearing on the appeals commenced on December 4, 2000. At the hearing, the Court asked defense counsel to provide additional information regarding defendant's prospective employment and, with defendant's consent, continued the hearing to December 7, 2000.

On December 7, 2000, the parties informed the Court that defendant was scheduled for a trial on December 13, 2000 on an unrelated state court criminal charge of felony assault. Due to the possible impact of a conviction on the state charges on the bail issue, the Court, with defendant's consent, continued the hearing to December 15, 2000.

On December 15, 2000, the parties informed the Court that defendant was convicted of misdemeanor assault in state court and was awaiting sentencing. The Court, with defendant's consent, continued the hearing to January 8, 2001.

On January 8, 2001, the parties informed the Court that defendant was scheduled for sentencing in the state court on February 2, 2001. Because the terms of the state court sentence could have possibly rendered the bail issue moot, defense counsel requested a continuance until after February 2, 2001. Accordingly, the Court continued the hearing to February 7, 2001.

On February 7, 2001, the parties informed the Court that defendant received a sentence of time served on his state court misdemeanor assault conviction. The Court then completed the hearing and reserved decision.

After considering the respective proffers of evidence at the hearing, reviewing the transcript of the proceedings before the Magistrate Judge and the submissions of the parties, and hearing argument from counsel, the Court finds, pursuant to 18 U.S.C. § 3142, that no condition or combination of conditions will reasonably assure the safety of the community if defendant is released. Accordingly, the Court revokes Magistrate Judge Foschio's release orders and orders that defendant be detained pending trial.

### FINDINGS OF FACT

The Court makes these findings of fact based on the evidence presented by way of proffer at the hearings before Magistrate Judge Foschio and this Court.

### A. *Background and Circumstances Surrounding Charged Conduct*

The conduct charged in the first indictment (00–CR–159A) arises from alleged sales in 1997 of methamphetamine and marijuana by the defendant to a cooperating witness while in the presence of an undercover agent.

The offenses charged in the second indictment (00–CR–185A) arise out of circumstances surrounding defendant's arrest on the first indictment. Defendant was arrested on the first indictment on September 12, 2000, at his home in Tonawanda, New York. During the arrest, agents found within defendant's residence a stolen shotgun and ammunition for the shotgun. Agents also found within the residence drug records, various recipes and literature dealing with the manufacture of methamphetamine, a thermos bottle containing approximately ¾ ounce of methamphetamine, and receipts showing money transfers totaling more than $17,000 over a two-day period in September 2000. Agents further discovered several active and inactive "growing rooms" for marijuana within the residence and several marijuana plants in defendant's yard. Agents seized in excess of 100 marijuana plants.

Among the documents located by agents at defendant's residence was a document indicating that defendant maintained a storage locker at a local commercial storage facility. The agents asked for and obtained defendant's consent to search the storage locker. Upon searching the locker, agents found recipes, precursor chemicals and equipment necessary for the manufacture of methamphetamine.

Contemporaneous with execution of the arrest warrant upon defendant, agents also executed seizure warrants for certain motor vehicles, including a certain motorcycle. The motorcycle was located in the detached garage at defendant's residence. Upon seizing the motorcycle from the garage, agents discovered a large safe. The agents sought and obtained a search warrant for the safe. Pursuant to the search warrant, agents opened the safe and found therein 2 ½ pounds of methamphetamine and approximately $12,900 in U.S. currency.

### B. *Criminal History*

Defendant has several previous felony and misdemeanor convictions, some of which involve crimes of violence. He also has several previous arrests for offenses involving violent behavior, which did not result in conviction.

In 1980, defendant was convicted of driving while impaired and leaving the scene of an accident.

In 1982, defendant was convicted of felony assault in state court and sentenced to probation. The charges in that case arose from an altercation during which defendant stabbed the victim with a knife.

In 1984, defendant was convicted of two separate drug felonies, one in state court and one in federal court. Those offenses both occurred while defendant was on probation supervision as a result of his 1982 assault conviction.

In March 2000, defendant was arrested and charged by indictment in state court with assault with intent to cause physical injury with a weapon. The charges in that case arose from an altercation defendant had with a grocery store clerk during which defendant struck the clerk in the head with a glass mustard jar. Defendant was convicted in December 2000 of misdemeanor assault and was sentenced to time served.

While defendant was released on bail awaiting trial on the March 2000 assault charge, he committed the offenses alleged in the second indictment here, *i.e.,* possession with intent to distribute methamphetamine and marijuana and possession of a firearm in furtherance of drug trafficking.

Also while defendant was on bail, he was arrested on two other occasions. On July 19, 2000, he was arrested for criminal mischief with intent to damage property, a misdemeanor. Those charges were ultimately dismissed and the Court has no further information regarding those charges. Defendant was also arrested on August 11, 1999 and charged with cruelty to animals by the Niagara County Sheriff's Office. That charge arose from a domestic dispute defendant had with his girlfriend. During the dispute, defendant picked up a cat and threw it at his girlfriend. The charges were ultimately adjourned in contemplation of dismissal.

Finally, the Court notes that in 1980, defendant was charged with felony assault, but the charges were ultimately dismissed. The Court has no further information regarding the facts and circumstances of that arrest or the alleged conduct.

In sum, defendant has two prior drug felony convictions, one prior violent felony conviction, one prior violent misdemeanor conviction, and several arrests arising from violent behavior. Defendant's two drug felonies were committed while he was on probation supervision and the offenses alleged in the second indictment here occurred while he was released on bail on an unrelated state charge.

## C. *Personal History and Characteristics*

Defendant claims to be a self-employed construction worker. He also states that he buys and sells used cars. Defendant reported to the Pretrial Services Officer that he has a total monthly income of approximately $2,000, yet has a negative monthly cash flow, as his expenses total more than $2,000 a month.

Defendant's claims regarding his poor financial situation and his sources of his income appear inconsistent with several other facts in the record. For example, despite a negative cash flow, in April 2000, defendant bought his current residence. Further, his attorney stated before the Magistrate Judge that defendant owns two other parcels of land. Additionally, defendant has a total of $14,800 in a bank account and a mutual fund and agents found $12,900 cash in a safe at his residence at the time of his arrest. Agents also found receipts for a cash transfer in excess of $17,000 over a two-day period. Defendant also reported to the Pretrial Services Officer that he owns two motorcycles worth a total of $13,000. Based on the discrepancy between defendant's reported negative clash flow and the substantial cash and property assets that he possesses, and in light of the other evidence seized from defendant's residence showing his involvement in drug trafficking, the Court finds that a substantial portion, if not all, of defendant's livelihood came from his drug trafficking activities.

Finally, defendant admitted to the Pretrial Services Officer that he uses methamphetamine.

## DISCUSSION

Under 18 U.S.C. § 3142(f)(1)(C), the government may move for pretrial detention of a defendant where the case involves "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.)[.]" In this case, the government moved for detention of the defendant pending trial, pursuant to § 3142(f)(1)(C), but Magistrate Judge Foschio denied the motion and ordered defendant released under certain conditions.

■■■ If a defendant is ordered released by a magistrate judge, the government may, under 18 U.S.C. § 3145(a)(1), move for revocation of the release order before the district court. Upon such motion, the district court must perform a *de novo* review of the magistrate judge's release order. *United States v. Leon,* 766 F.2d 77, 80 (2d Cir.1985) (finding that a district court should "not simply defer to the judgment of the magistrate, but reach its own independent conclusion"); *see also United States v. Colombo,* 777 F.2d 96, 100 (2d Cir.1985). When making its *de novo* review, the district court may rely on the record of the proceedings before the magistrate judge and may also accept additional evidence. *Colombo,* 777 F.2d at 98 n. 1; *Leon,* 766 F.2d at 80; *United States v. Delker,* 757 F.2d 1390, 1395–96 (3d Cir. 1985). Here, the government has moved this Court, pursuant to § 3145(a)(1), to revoke Magistrate Judge Foschio's release order and to order defendant detained pending trial, arguing that defendant presents a risk of danger to the community.[1]

---

**1.** The government also argues that defendant presents a risk of flight, but the Court finds that argument without merit. Defendant has strong ties to the community and apparently has family and friends willing to put up large amounts of cash and property to secure the substantial bail set by the Magistrate Judge. Further, despite having a lengthy criminal record, defendant appears to have no record of missing court dates or jumping bail. Although defendant faces a substantial sentence on these two indictments, the Court cannot say by a preponderance of the evidence that he presents an unreasonable risk of flight and that no condition or combination of conditions would assure his appearance. The Court finds that the substantial bail and other conditions set by the Magistrate Judge would be sufficient under the facts present here to reasonably assure defendant's appearance at court proceedings.

■ Under 18 U.S.C. § 3142(e), where a judicial officer finds that there is probable cause to believe that a defendant committed a narcotics offense for which the potential term of imprisonment is ten or more years, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of the community. *United States v. Rodriguez*, 950 F.2d 85, 87 (2d Cir.1991). An indictment establishes probable cause to trigger the statutory presumption. *Id.* Thus, in cases such as this, there is a rebuttable presumption that the defendant poses a danger to community. *Id.*

■ Facts supporting a finding of dangerousness to the community must "be supported by clear and convincing evidence." 18 U.S.C. § 3142(f); *Rodriguez*, 950 F.2d at 88. The government maintains the burden of proving dangerousness by clear and convincing evidence even when the statutory presumption has been invoked. *Rodriguez*, 950 F.2d at 88.

Although the government retains the burden of persuasion on this issue, "a defendant must introduce some evidence contrary to the presumed fact in order to rebut the presumption." *Id.* at 88 (citing *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir.1986)). "Once a defendant introduces rebuttal evidence, the presumption, rather than disappearing altogether, continues to be weighed along with other factors to be considered when deciding whether to release a defendant." *Id.*

■ For purposes of the § 3142 determination, the danger that the defendant poses to the community need not arise from or have a nexus with the offenses charged in the indictment. *Id.* In other words, the sole question is whether the defendant is a danger to others, regardless of whether the danger is related to drug trafficking. *Id.* ("Shooting a man in the kneecap over a small debt is probative of dangerousness, regardless of whether the incident was related to drug trafficking."); *United States v. Quartermaine*, 913 F.2d 910, 917 (11th Cir.1990) ("[W]e reject [defendant's] suggestion that his acts of 'domestic' violence do not support a finding of dangerousness to the community. A willingness to strike loved ones offers probative evidence of a tendency to violence and dangerousness toward others.").

In determining whether there are conditions of release that will reasonably assure the safety of the community, the Court must consider the factors provided in 18 U.S.C. § 3142(g):

(1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including-

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The Second Circuit has warned that, in applying these factors to any particular case, "the court should bear in mind that it is only a 'limited group of offenders' who should be denied bail pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir.) (quoting S.Rep. No. 225, 98th Cong., 2nd Sess. 7, reprinted at 1984 U.S.C.C.A.N. 3182, 3189), *cert. denied*, 484

U.S. 840, 108 S.Ct. 128, 98 L.Ed.2d 85 (1987).

Applying the above principles to the instant case, the Court finds that defendant should be detained. Preliminarily, the Court notes that the presumption in 18 U.S.C. § 3142(e) is in effect in this case, which operates as a presumption that defendant poses a danger to the safety of the community if released. Defendant has come forth with no evidence to rebut this presumption. He simply argues that because the government has now put him out of the drug trafficking business, he no longer poses a danger to the community. This argument ignores, however, the evidence of defendant's propensity for violent behavior and his apparent willingness to commit crimes even when he is under court-ordered supervision. The argument also assumes, without evidence, that defendant cannot and will not return to drug trafficking if he is released.

■ Applying the factors in 18 U.S.C. § 3142(g), the Court finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if defendant is released. The first factor of § 3142(g)—"[t]he nature and circumstances of the offense charged, including whether the offense involves a ... narcotic drug"—weighs in favor of detention. Defendant faces substantial penalties on the charges contained in the two indictments here. For example, on Count I of the second indictment-possession with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine-defendant faces a mandatory minimum sentence of ten years and a maximum sentence of life. *See* 21 U.S.C. § 841(b)(1)(A).

Defendant also potentially faces certain sentencing enhancements based on his prior drug-related felony convictions. For example, if convicted under § 841(b)(1)(A), defendant could face mandatory life imprisonment because he has previously been convicted of two felony drug offenses.

The potentially lengthy sentence defendant faces, when combined with his apparent disregard for the law, as evidenced by his significant criminal history, leads the Court to conclude that the defendant would not hesitate to commit further crimes if released on bail. In other words, defendant may conclude that he has nothing to lose by returning to his old ways.

The second factor of § 3142(g)—"the weight of the evidence against the person"—also weighs in favor of detention. The government's proffer shows it has an overwhelming case against the defendant in both indictments. The charges in the first indictment arise from drug transactions actually witnessed by an undercover agent. The charges in the second indictment all arise from drugs and a weapon found in defendant's possession at the time of his arrest on the first indictment.

The third factor of § 3142(g)—"the history and characteristics of the person"—likewise weighs in favor of detention. As stated above, defendant has a substantial criminal history, including two prior drug felony convictions, one prior violent felony conviction, one prior violent misdemeanor conviction, and several arrests arising out of violent behavior. His two drug felony convictions were committed while he was on probation and the offenses charged in the second indictment here were allegedly committed while he was on bail in a pending state court case. Thus, it appears that defendant has no qualms about committing crimes while under court-ordered supervision.

Further, as the Court found above, it appears that at least a substantial portion of defendant's livelihood has been dependent on his drug trafficking activities. That fact, combined with the fact that defendant is a methamphetamine user, makes it likely that defendant would return to drug trafficking activity if released.

The last factor of § 3142(g)—"the nature and seriousness of the danger to any person or the community that would be

posed by the person's release"—weighs most heavily in favor of detention. Defendant has a history of violent behavior. He has a prior felony assault conviction and a recent misdemeanor assault conviction.

The Court finds it significant that defendant has been involved in several violent altercations within the last year. The altercation giving rise to his recent misdemeanor assault conviction occurred in March 2000. He was then arrested in July 2000 for destruction of property, and in August 2000 for an offense arising from a violent domestic dispute. The Court finds the circumstances surrounding the misdemeanor assault conviction to be particularly probative of defendant's dangerousness. The fact that defendant would violently strike a store clerk in the head with a glass mustard jar is certainly probative of dangerousness. It would appear, based on the record, that defendant has a violent temper which he is often unable to control.

In sum, the Court finds by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of the community if defendant is released. He has both a past and recent history of violent behavior. Further, in light of the substantial sentence he faces, his dependence on drug trafficking for his livelihood, his use of methamphetamine, and his history of disregarding conditions of court-ordered supervision, it is likely that defendant will return to drug trafficking if released. These facts, when combined with the statutory presumption of dangerousness, warrant detention of the defendant pending trial.

### CONCLUSION

For the reasons stated, the Court hereby revokes the Magistrate Judge's release orders and orders that defendant be detained pending trial on these two indictments.

The Court further orders that defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practical, from persons awaiting or serving sentences or being held in custody pending appeal.

The Court further orders that defendant be afforded reasonable opportunity for private consultation with counsel.

Finally, the Court directs that on order of a Court of the United States or on request of an attorney for the government, the person in charge of the corrections facility in which defendant is confined deliver defendant to a United States Marshal for the purpose of appearance in connection with any court proceeding.

IT IS SO ORDERED.