UNITED STATES of America, Appellant,

v.

Jack FERRANTI, also known as 1–95 cr–119–01, Defendant–Appellee.

No. 1914, Docket 95–1172.

United States Court of Appeals, Second Circuit.

Argued April 19, 1995.

Decided Sept. 26, 1995.

Lauren J. Resnick, Brooklyn, NY, Assistant United States Attorney, Eastern District of New York (Zachary W. Carter, United States Attorney, Julie E. Katzman, Assistant United States Attorney, on the brief) for appellant.

Susan C. Wolfe, Hoffman & Pollok, New York City, for defendant-appellee.

Before MESKILL, ALTIMARI, and CALABRESI, Circuit Judges.

ALTIMARI, Circuit Judge:

The government appeals the March 23, 1995 order of the United States District Court for the Eastern District of New York (Weinstein, J.), granting the release of petitioner-appellee Jack Ferranti ("Jack Ferranti" or "Ferranti"). Following oral argument on April 19, 1995, we reversed the district court without comment. We now explain our decision.

Ferranti was arrested on February 27, 1995. He stood accused of conspiracy to commit arson, arson resulting in death, witness tampering and mail fraud. The district court referred all pre-trial detention matters to United States Magistrate Judge Roanne L. Mann, who conducted a hearing on Ferranti's application to be released on bail pending trial. Based on the government's proffers, documentary evidence, and five hours of testimony by FBI Special Agent Cindy Peil, the magistrate judge concluded that Ferranti and his two co-defendants were a danger to the community. Finding no conditions that could assure the safety of the community, she denied the application for bail. Judge Weinstein reversed the magistrate judge's denial of bail to Ferranti, although he affirmed her decision to deny bail to Jack Ferranti's brother, Mario Ferranti. The government appealed.

At the hearing before the magistrate judge, the government proffered evidence that Ferranti purposefully started a fire in a building in Maspeth, Queens at about 11:00 p.m. on a week night, when most of the building's residents were at home. New York City firefighter Lieutenant Thomas A. Williams was killed in the blaze. The government established that Ferranti, who owned a clothing boutique located on the building's first floor, had a motive for the arson. Ferranti admitted lying to the police about his whereabouts on the night of the arson. Further, a grand jury found probable cause to believe that Ferranti tampered with

a witness whose testimony would bear on the arson charge.

In addition to the arson, the government offered proof that Ferranti carried a fully loaded, albeit possibly disabled, .22 caliber revolver. At the time the bail determination was made, an indictment was pending in the Southern District of New York charging Ferranti, a convicted felon, with unlawful possession of that weapon.

The government also contended that Ferranti directed Mario Ferranti and others to intimidate tenants in the numerous buildings that he owned. Specifically, the government intended to show that Mario Ferranti used a large dog to physically evict tenants at his brother's behest. Ferranti also directed his brother and others to intimidate a mortgagee, Robert Cohen ("Cohen"). Ferranti fell behind on mortgage payments and Cohen threatened to foreclose. Shortly thereafter, Cohen was menaced and then shot in the neck at his home by unidentified men. He promptly sold the mortgages back to Ferranti at a loss.

Worse still, Jack Ferranti allegedly ordered Mario Ferranti to terrorize and kill Bruce Bailey, a tenants' rights activist. Bailey was found murdered, his body dismembered. Mario Ferranti allegedly claimed credit for mutilating the corpse. The government's proffer also included evidence of the attempted murder of an alleged criminal associate, Patrick Donnelly ("Donnelly"). After Donnelly allegedly withdrew from a bank robbery conspiracy in 1985, Ferranti shot him several times. Donnelly and other witnesses identified Jack Ferranti as the shooter. The magistrate judge did not rely heavily on this evidence, however, finding it weaker than the government's other proof.

### Discussion

A district court may order pretrial detention where it finds that "no condition or combination of conditions will reasonably assure ... the safety ... of the community...." 18 U.S.C. § 3142(e). To order detention, the district court must find, after a hearing, that the government has established the defendant's dangerousness by clear and convincing evidence. *See* 18 U.S.C.

§ 3142(f). The rules of evidence do not apply in a detention hearing. *See id.* Further, the government may proceed by proffer. *See, e.g., United States v. Salerno*, 481 U.S. 739, 743, 107 S.Ct. 2095, 2099, 95 L.Ed.2d 697 (1987) (government relied on lengthy proffer derived from electronic surveillance and anticipated testimony for pretrial detention hearing); *cf.* 18 U.S.C. § 3142(f) (allowing detainees to proceed by proffer).

 We review for clear error the historical facts upon which a district court relies in determining whether a defendant poses a risk to the community. *United States v. Melendez–Carrion*, 790 F.2d 984, 994 (2d Cir. 1986). Our scope of review is slightly broader with respect to the "ultimate determination" that a defendant does, or does not, present a risk to the citizenry. *See id; see also United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir.1991). The determination that a package of bail conditions will protect the public from a purportedly dangerous defendant, *see id.* at 89; *United States v. Orena*, 986 F.2d 628, 632 (2d Cir.1993), is a mixed question of law and fact which we review for clear error, *cf. United States v. Shakur*, 817 F.2d 189, 196 (2d Cir.) (whether bail package will assure presence at trial is mixed question of law and fact reviewed for clear error), *cert. denied*, 484 U.S. 840, 108 S.Ct. 128, 98 L.Ed.2d 85 (1987).

 In this case, Judge Weinstein agreed that the government's proffer and the evidence put on at the hearing established by clear and convincing evidence that Mario Ferranti was a danger to the community. However, Judge Weinstein concluded that the proffer and proof with respect to Jack Ferranti was "equivocal." According to Judge Weinstein, the government had not made "that strong a case on the basis of the full record that [he had] studied." Accordingly, the bail package created by the district court contained no special conditions to assure the community's safety, except a court order forbidding both defendants from tampering with witnesses or obstructing the evidence.

We conclude that the district court clearly erred. By proffer and through five hours of

testimony, the government established by clear and convincing evidence that Jack Ferranti was a danger to the community. A grand jury found probable cause to believe Ferranti was involved in the Maspeth arson that put at risk numerous tenants and killed a firefighter. Ferranti's own conduct suggested his complicity: he lied when asked his whereabouts on the night of the fire, and, as the grand jury found, he tampered with a witness who would have testified in connection with the arson.

Further, a grand jury in the Southern District indicted Ferranti, a convicted felon, on a charge of possessing a firearm. Moreover, Ferranti possessed that gun in a public place. We agree with the magistrate judge that Ferranti's assertion that the weapon was disabled does not detract from the effect it would have on others; Ferranti's possession of a loaded weapon in a public place at the very least suggests his willingness to use it as a tool for intimidation.

FBI Agent Peil testified that Ferranti directed his brother to terrorize tenants into moving out. The government proposed to corroborate this assertion with the testimony of two confidential informants, both of whom had been providing reliable information to the government in this and other cases. That Ferranti posed a danger to the community was further indicated by the government's proffer with respect to Ferranti's mortgagee, Robert Cohen. Before Cohen was shot, someone from Cohen's office was warned that Cohen could wind up like Bruce Bailey, the tenants' rights activist who was involved in organizing four of Ferranti's building before he was murdered and mutilated. It is clear that the threat toward, and assault on, Cohen paid off: he sold the mortgages back to Ferranti at a loss immediately after he was shot.

Further, the government's evidence included a statement by Mario Ferranti that helped explain Ferranti's motive for allegedly ordering Bailey's murder. According to Mario Ferranti, Bailey's organizing of the buildings contravened an alleged "understanding" between Ferranti and Bailey—cemented by Ferranti's bribery of Bailey—that Bailey would not organize Ferranti's build-

ings. Mario Ferranti also admitted that he had hired people to stalk Bailey on his brother's say-so.

■ We agree with the magistrate judge that the cumulative effect of these incidents, as to which the government offered testimonial evidence as well as proffers, constitutes clear and convincing evidence that Jack Ferranti posed a danger to the community. The district court's conclusion to the contrary appears to have rested principally on its belief that Mario Ferranti, as to whom the district court found the evidence of dangerousness "overwhelming," was the more dangerous figure for having carried out the ugly incidents. As the district court itself has pointed out, however, it is not necessary " 'that the defendant himself commit acts of physical violence as a condition precedent to a detention order.' " *United States v. Colombo,* 777 F.2d 96, 98 (2d Cir.1985) (quoting from district court ruling (Weinstein, J.)). Further, while the district court may have believed Jack Ferranti to be less dangerous than Mario Ferranti, "that argument merely underlines [Mario Ferranti's] criminal and violent propensities but is hardly persuasive of [Jack Ferranti's] pacific nature." *Orena,* 986 F.2d at 632. In light of (1) the district court's finding that the evidence as to Mario Ferranti was overwhelming, (2) the evidence of Jack Ferranti's personal involvement in the arson, and (3) the proof and proffer that Jack Ferranti directed his brother to carry out the other fearsome activities detailed at the hearing, it was clear error to find that Jack Ferranti did not pose a danger to the community.

■ We also find that the conditions of bail established by the district court were insufficient to protect the community. The district court set bail at $1,000,000, to be secured by properties owned by Ferranti and his immediate family, ordered Ferranti not to unlawfully evict tenants, and required that he avoid direct or indirect contact with any potential witnesses. We first note that only two of these three conditions related to the risk posed by Ferranti to the community. The $1,000,000 bond would have deterred flight, not danger. *See Rodriguez,* 950 F.2d at 89. Thus, we look to the district court's

mandates concerning eviction and witness tampering to determine the sufficiency of the court's safeguards for the community.

Ferranti's potential to cause mayhem was to be contained by the court's order that he refrain from unlawfully evicting tenants or contacting witnesses. But "[p]rohibiting [a defendant] from committing a crime or intimidating a witness does not at all impede his ability to do so, and requires no more of him than that which the law already demands from [a defendant] and every other citizen." *Colombo*, 777 F.2d at 100. To the extent that the district court's order barring Ferranti from any contact with potential witnesses would have hindered the commission of the crime of witness intimidation, we deem it insufficient to meet the clear risk posed by Jack Ferranti. Moreover, the district court's order contained no provisions that would have impeded Ferranti's ability to commit arson, assault, murder or attempted murder, nor can we imagine any such conditions. *See, e.g., Orena*, 986 F.2d at 632 (substantial bail secured by real property, defendants' confinement to residences, restrictions on visitors and phone calls, authorized wiretap, use of electronic bracelets, orders to call pretrial services, and authorization for government to search homes at any time insufficient to ensure safety of community where defendants directed others to commit murder and loansharking, among other things); *United States v. Tortora*, 922 F.2d 880, 886–87 (1st Cir.1990) (elaborate conditions dependent upon good faith compliance were insufficient where defendant's violent history provided no basis for believing that good faith would be forthcoming). Accordingly, we reverse the order of the district court.

### Conclusion

The strong evidence that Jack Ferranti committed a fatal arson together with the government's additional evidence of his involvement in assault, attempted murder and murder persuades us that the district court clearly erred in granting Ferranti's motion to be released on bail. No conceivable conditions could ensure the safety of the community. Accordingly, the judgment of the district court is reversed.