**UNITED STATES of America,**

v.

**Peter GOTTI, et. al., Defendants.**

**Case No. 02–CR–606 (FB)(ASC).**

United States District Court,
E.D. New York.

Aug. 7, 2002.

Alan Vinegrad, United States Attorney for the Eastern District of New York, by Andrew Genser, Assistant United States Attorney, Brooklyn, NY, for the Government.

Gerald L. Shargel, Sarita Kedia, New York, NY, for the Defendant.

### MEMORANDUM & ORDER

BLOCK, District Judge.

Defendant Peter Gotti ("Gotti") moves, pursuant to 18 U.S.C. § 3145(b), to revoke the June 10, 2002 detention order of Magistrate Judge Cheryl L. Pollak.[1] Familiarity with that decision is presumed. The indictment charges Gotti with racketeering, racketeering conspiracy, money laundering conspiracy, and eight substantive counts of money laundering. The government charges that extortion and illegal gambling were the bases for the proceeds used in the money laundering transactions. The government alleges that Peter Gotti is the Acting Boss of the Gambino family.

### I. Legal Standard

■ The Court's review of the Magistrate's detention order is *de novo*. *See United States v. Leon,* 766 F.2d 77, 80 (2d Cir.1985); *United States v. Agnello,* 101 F.Supp.2d 108, 110 (E.D.N.Y.2000).

■ Under the Bail Reform Act ("BRA"), the Court should detain a defendant if "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e).[2] Here, the issue is dangerousness, not flight. A finding of dangerousness must be supported by "clear and convincing evidence." *United States v. Ferranti,* 66 F.3d 540, 542 (2d Cir.1995).

■ The factors to be considered in determining dangerousness are: (1) the nature and circumstances of the crimes charged, (2) the history and characteristics of the defendants, (3) the seriousness of the danger posed by the defendant's release; and (4) the evidence of the defendant's guilt. *See* 18 U.S.C. § 3142(g).

■ Title 18 U.S.C. § 3156(a)(4) defines the term "crime of violence" as "(A) an offense that has [as] an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another; (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or prop-

---

1. 18 U.S.C. § 3145(b) provides:
   Review of a detention order.—If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

2. Under certain circumstances, there arises a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e). The parties agree that under the circumstances of this case, no presumption applies.

erty of another may be used in the course of committing the offense." "[E]xtortion ... [is a] crime of violence within the meaning of the Bail Reform Act." *Agnello*, 101 F.Supp.2d at 110.

Danger to the community is not limited to violent crimes; it includes crimes that would harm the community. *See United States v. Millan*, 4 F.3d 1038, 1047 (2d Cir.1993) ("[T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community.") (quoting S.Rep. No. 225, 1984 U.S.C.C.A.N. 3182, 3195); *see also United States v. Colombo*, 777 F.2d 96, 100 (2d Cir.1985) ("[W]here there is a strong possibility that a person will commit additional crimes if released, the need to protect the community becomes sufficiently compelling that detention is, on balance, appropriate."); *cf. Leon*, 766 F.2d at 81 ("[I]t is clear that the harm to society caused by narcotics trafficking is encompassed within Congress's definition of 'danger.' "). The defendant need not have acted personally; he can be deemed dangerous if he directed others to commit crimes. *See Ferranti*, 66 F.3d at 543 (quoting *Colombo*, 777 F.2d at 100).

## II. Magistrate Judge Pollak's Decision

In a thorough, well-reasoned decision, Magistrate Judge Pollak rejected Gotti's argument that he cannot be detained on grounds of dangerousness because "he is not charged with a crime of violence." Order at 9.[3] Magistrate Judge Pollak concluded that

> it is clear from the indictment that Peter Gotti is charged with being the Acting Boss of the Gambino crime family, responsible for controlling the activities of the racketeering enterprise, and conspiring with the members of the organization to engage in the various acts charged in the indictment. Included among these predicate acts are numerous acts of extortion, which by its very nature is considered to be an act of violence under the [BRA] .... As such, while Peter Gotti may not be named in the specific racketeering counts of extortion, he could nonetheless be held responsible for the acts of the members of his organization if the government proves that he is in fact the Acting Boss of the family. The fact that there may be virtually no evidence of Gotti's direct participation in the charged crimes of violence "is not surprising if one accepts the determination made for the purposes of the bail hearings that [Gotti] played a leadership role" in the Gambino family.

Order at 9–10 (quoting *Colombo*, 777 F.2d at 99) (other citations omitted). Magistrate Judge Pollak found that "the government's detailed proffer, coupled with the testimony of Agent Hagarty, the exhibits, and the transcripts of recorded conversations, firmly establishes Peter Gotti's position .... [as] Acting Boss of the Gambino family[.]" *Id.* at 11. "Because of the authority inherent in that position," Magistrate Judge Pollak concluded that Gotti "poses a danger for which there can be no combination of conditions sufficient to prevent him from continuing in that role even if placed under house arrest." *Id.* (citing *United States v. Orena*, 986 F.2d 628, 632–33 (1993)). The Magistrate Judge reasoned that "since there does not appear to be a dispute that the Acting Boss of an organized crime family has substantial

---

**3.** The racketeering and racketeering conspiracy charges in the indictment are based on thirty-three underlying acts, including, *inter alia:* extortion, wire fraud, money laundering, and conducting an illegal gambling business. Gotti is charged with participating in nine of the thirty-three acts. None of these nine acts involved violence since they only entailed money laundering or money laundering conspiracy.

power and authority to supervise the criminal activities of the family, including acts of violence, the threat of Gotti's continued liberty stems from his ability to continue to direct, plan, order, and supervise criminal activity even if he himself may not be personally involved." *Id.* at 12.

### III. Present Motion

In his present motion, Gotti argues that "there is no case supporting detention where the defendant is not actually charged in the act of violence whether it be extortion or some other act of violence." Tr. of Oral Argument, July 11, 2002, at 23. He contends that

the government [has] resort[ed] to the far flung theory that, simply because Peter Gotti is charged in a racketeering conspiracy which includes predicate acts of extortion by others, Mr. Gotti is also charged with crimes of violence.... This argument is absurd. While Mr. Gotti is indeed charged in a racketeering conspiracy, he cannot be held responsible for the acts of others about which he had no knowledge and in which he is not charged.

Gotti Letter, July 1, 2002, at 5 (internal citation omitted).

█ Under Second Circuit precedent concerning pretrial detention of organized crime leaders, if a defendant is a leader of an organized crime family the inference should be drawn that the defendant has knowledge of the acts of his underlings and is accountable for their conduct. As stated in *Ferranti*, "it is not necessary that the defendant himself commit acts of physical violence as a condition precedent to a detention order." *Ferranti*, 66 F.3d at 543 (quoting *Colombo*, 777 F.2d at 98) (internal quotation marks omitted).

Here, as Magistrate Judge Pollak noted, the government presented testimony, transcripts, surveillance records and photographs documenting Gotti's position as Acting Boss. Indeed, Gotti does not seriously dispute that he is the Acting Boss of the Gambino family. At oral argument the Court afforded defense counsel an opportunity to proffer evidence as to who was the Acting Boss, and counsel demurred:

THE COURT: Do you want to tell the Court who the acting boss is?

MR. SHARGEL: I have no idea.

THE COURT: I'll let you make a record if you want to produce evidence of that.

MR. SHARGEL: I understand that but ... the fact is ... that under the Bail Reform Act ... I don't have to prove who did it. There is no Perry Mason sub-section to the statute.

THE COURT: I'm not suggesting you do. I am just giving you the opportunity if you choose to avail yourself of that.

MR. SHARGEL: I appreciate the opportunity and I'll pass on to my next argument.

Tr. of Oral Arg., July 11, 2002, at 31 (citation omitted); *see also* 18 U.S.C. § 3142(f) ("The [accused] shall be afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the hearing; and to present information by proffer or otherwise."); *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir.2001) ("[T]he government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community.").

█ In circumstances where the government has demonstrated that a defendant is a leader of an organized crime family, the Second Circuit has uniformly held that the defendant is dangerous because inherent in the leadership position is the supervision of criminal activity that cannot be curtailed by any condition or combination of conditions of release. *See Orena*, 986 F.2d at 631–32 (reversing district court's pretrial release of Acting Boss of Colombo Family); *Colombo*, 777 F.2d at

**300**

99–100 (reversing district court's pretrial release of Leader of Colombo "crew"); *Ferranti*, 66 F.3d at 543–44 (reversing pretrial release of defendant who directed others to carry out crimes); *see also United States v. Bellomo*, 944 F.Supp. 1160, 1166 (S.D.N.Y.1996) (Acting Boss of Genovese family detained); *United States v. Defede*, 7 F.Supp.2d 390, 396 (S.D.N.Y.1998) (Acting Boss of Luchese family detained). The Court views this spate of Second Circuit authority, which it is obliged to follow, as being the pragmatic equivalent of a *per se* rule that where the government establishes that a defendant is the leader or acting leader of an organized crime family, the defendant must be detained.

Apparently recognizing that Second Circuit authority is uniformly against him, Gotti cites to the First Circuit's decision in *United States v. Patriarca*, 948 F.2d 789 (1st Cir.1991), where the court upheld pretrial release of a former leader of an organized crime family; however, Gotti fails to note that in *Patriarca*, the government had stipulated that the defendant no longer held his leadership position at the time of the bail determination. *See id.* at 792.

### CONCLUSION

The motion to revoke Magistrate Judge Pollak's detention order is denied.

**SO ORDERED.**