UNITED STATES OF AMERICA

v.

**John A. GOTTI, et al., Defendants.**

**No. 04 CR. 690(SAS).**

United States District Court,
S.D. New York.

Jan. 3, 2005.

---

**32.** *Oates,* 445 F.Supp. at 353.

**33.** *See, e.g.,* Dec. 29 Tr. at 8 ("I wish I had 20/20 hindsight ... I thought we made a very strong case.").

Michael G. McGovern, Joon Kim, Jennifer Rodgers, Assistant United States Attorneys, New York City, for the Government.

Jeffrey Lichtman, Law Offices of Jeffrey Lichtman, Marc Allan Fernich, Law Office of Marc Fernich, New York City, Barry Levin, Garden City, NY, Joseph Corozzo, Rubinstein & Corozzo, LLP, New York City, Charles F. Carnesi, Garden City, NY, for Defendants.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

On July 21, 2004, a grand jury in the Southern District of New York indicted John A. Gotti, Jr. ("Gotti") on a number of charges, including racketeering, three murder conspiracies and attempted murders, extortion, loansharking, and securities fraud.[1] The government alleges that Gotti committed these acts while occupying a leadership position in a criminal organization known as the Gambino Organized Crime Family of La Casa Nostra ("Gambino Crime Family"). At the time the indictment was returned, Gotti was completing a sentence on a previous conviction for racketeering activities.[2] But for these new charges, he would have been released from custody on September 7, 2004.[3] Gotti is seeking bail with respect to the instant charges and the government is seeking pretrial detention. I referred the bail application to the magistrate judge, who denied bail. Gotti now appeals that order.

## I. BACKGROUND

On October 5, 2004, following a detention hearing, Magistrate Judge Frank

---

**1.** More specifically, Gotti is charged with one count of engaging in the affairs of an enterprise through a pattern of racketeering in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). Within that racketeering charge, Gotti is named in connection with the following predicate acts: three conspiracies to commit murder as well as attempted murder; one conspiracy to commit securities fraud and the commission of mail and wire fraud; construction industry extortion; and two acts of loansharking. He is also charged with one count of engaging in a racketeering conspiracy, one count of conspiracy to commit securities fraud, two counts of fraud in connection with the offer and sale of securities, one count of mail fraud, one count of

wire fraud, and one count of construction industry extortion. *See generally* Indictment, 04 Cr. 690(SAS).

**2.** On April 5, 1999, Gotti pled guilty to participating in a racketeering conspiracy that engaged in bribery, extortion, mail fraud and the supervision of gambling operations, as well as to the extortionate extensions of credit and knowingly filing a false tax return. *See* 4/5/99 Transcript of Guilty Plea before District Judge Barrington D. Parker, Jr. ("Guilty Plea"), Ex H. to Government's Opposition to Defendant John A. Gotti's Motion for Bail Pending Trial ("Gov't Mem.").

**3.** *See* Gov't Mem. at 28.

Maas ordered Gotti detained pending trial. Judge Maas did not find that Gotti presented a risk of flight, but did find that Gotti has been charged with a crime of violence and posed a danger to the community.[4]  Specifically, Judge Maas found that "somebody who [is] a member ... of the Gambino crime family presents a threat to community safety, even ... if that person [is] not out there wielding a weapon himself."[5]  Based on that finding he posed the following question: "[H]as Mr. Gotti renounced any continuing role in that crime family such that he presents no continuing threat to the community's safety ... ?"[6] He then answered that question as follows: "I don't think I'm able to say that Mr. Gotti has renounced such a role, even a diminished role, and it seems to me therefore the Government has sustained its burden of showing that Mr. Gotti is a player in the Gambino crime family."[7]  Finally, the court addressed what it considered the "bottom line": "[I]f Mr. Gotti has not renounced his role, is the bail package sufficient to ensure community safety?"[8]  The court then held that the bail package does not "do enough to ensure community safety" given that the court credited the charge that the defendant "inflicted a beating and perhaps worse on somebody simply because they [sic] besmirched his father's name."[9]

In appealing that order Gotti argues that the Magistrate Judge applied the wrong legal standard and that there are conditions that can assure the safety of the community.

## II.  LEGAL STANDARD

The United States Constitution requires that "[e]xcessive bail shall not be required."[10]  The Bail Reform Act ("BRA")[11] provides that if the court determines that release on an appearance bond is not sufficient, the court shall order pretrial release "subject to the least restrictive further condition, or combination of conditions, that [the court] determines will reasonably assure the appearance of the person as required and the safety of any other person and the community...."[12] The BRA further provides, however, that a court may order a defendant detained pending trial if he has been charged with a crime of violence and if the court finds, by clear and convincing evidence, that "no condition or combination of conditions will reasonably assure ... the safety of any other person and the community."[13]

A district judge must undertake a *de novo* review of a magistrate judge's decision to release or detain a defendant.[14]  In deciding whether there are conditions of release that will reasonably assure the appearance of the person and the safety of the community, the court should consider the following factors:

---

4.  *See generally* 10/5/04 Transcript of Detention Hearing before Magistrate Judge Frank Maas.

5.  *Id.* at 70.

6.  *Id.* at 71.

7.  *Id.*

8.  *Id.*

9.  *Id.* at 71–72.

10.  U.S. CONST. amend.  VIII.

11.  18 U.S.C. § 3141 *et seq.*

12.  *Id.* § 3142(c)(1)(B).

13.  *Id.* § 3142(e).

14.  *See United States v. Leon,* 766 F.2d 77, 80 (2d Cir.1985); *United States v. Smith,* No. 02 Cr. 1399, 2002 WL 31521159, at *1 (S.D.N.Y. Nov.13, 2002); *Borodin v. Ashcroft,* 136 F.Supp.2d 125, 128 (E.D.N.Y.2001).

(1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.... [15]

Although in certain cases a rebuttable presumption arises that "no condition or combination of conditions will reasonably assure the safety of any other person and the community," [16] this is not such a case.[17] Accordingly, there is no presumption in favor of detention. The final section of the BRA states: "Nothing in this section shall be construed as modifying or limiting the presumption of innocence." [18]

■ When considering an application for pretrial detention, the court must first determine whether the government has established "by a preponderance of the evidence ... that the defendant ... presents a risk of flight." [19] Here, the government has not argued that the defendant poses a risk of flight, given the bail conditions that he has proposed. Because it is undisputed that Gotti is charged with committing a crime of violence,[20] the only remaining question is whether this Court finds that the government has demonstrated, by "clear and convincing evidence," that "no condition or combination of conditions will reasonably assure the safety of any other person and the community." [21] Finally, a court should always "bear in mind that it is only a 'limited group of offenders' who should be denied bail pending trial." [22]

### III. DISCUSSION

As noted earlier, the defense begins its appeal by arguing that the Magistrate Judge applied the wrong legal standard. While this may be so, it is irrelevant to this Court's determination. The question before this Court is not whether Gotti must prove that he has renounced his membership in the Gambino Crime Family, or whether the government must prove

---

**15.** 18 U.S.C. § 3142(g).

**16.** *Id.* § 3142(e).

**17.** The rebuttable presumption arises in narcotics cases requiring a maximum prison term of more than ten years; in crimes involving the use, carrying, or possession of a weapon in furtherance of a crime involving violence or narcotics; in conspiracies to kill, injure or maim a person outside the United States; and in crimes involving acts of terrorism. *See id.*

**18.** 18 U.S.C. § 3142(j).

**19.** *United States v. Friedman,* 837 F.2d 48, 49 (2d Cir.1988).

**20.** *See* Memorandum in Support of John A. Gotti's Motion for Bail Pending Trial ("Gotti Mem.") at 7.

**21.** 18 U.S.C. § 3142(f).

**22.** *United States v. Shakur,* 817 F.2d 189, 195 (2d Cir.1987) (quoting S.Rep. No. 98–225 at 7, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3189).

that he is still in a leadership position within that organization. Moreover, both parties agree that there is not and cannot be a per se rule that requires detention whenever a defendant is accused of being a member of, or even a leader in, an organized crime family.[23] Rather, the question now before this Court is whether the government has shown, by clear and convincing evidence, that Gotti is a danger to the community such that there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community if he is released on bail.[24] To answer this question I turn to the factors set forth in the BRA.

### A. The Nature and Circumstances of the Offenses Charged

As noted earlier, Gotti is charged with crimes of violence including racketeering, racketeering conspiracy, mail, wire and securities fraud and extortion.[25] The predicate racketeering acts, some of which are also charged as substantive offenses, include, *inter alia*, attempted murders and murder conspiracies. One of those attempted murders was ordered for the sole purpose of silencing a vocal critic of the racketeering enterprise. The indictment further charges that Gotti has held a leadership position in the Gambino Crime Family for more than fifteen years.[26]

### B. The Weight of the Evidence

The evidence supporting these charges is strong in that no fewer than ten cooperators will testify to either the specific acts charged or Gotti's leadership role in the crime organization, or both.[27] The cooper-

23. *See* 12/23/04 Transcript of Detention Hearing before District Judge Shira A. Scheindlin ("Dist.Tr.") at 5–6, 24; *United States v. Ciccone,* 312 F.3d 535, 543 (2d Cir.2002) (no per se rule). *See also* Gotti Mem. at 23–24 (listing unpublished decisions in which organized crime leaders were released on bail).

24. The defendant is offering the following bail package: (1) a $10 million personal recognizance bond co-signed by at least ten financially responsible people, secured by $7 million worth of real property; (2) complete home confinement (including a prohibition on visits to counsel's office) with electronic monitoring; (3) authorized wiretapping of telephones and video surveillance; (4) private security guards preventing any visitors other than counsel or others approved by the government; (5) prohibition on defendant's contact, by any means direct or indirect, with any alleged present or former member of organized crime or any identified government witness; and (6) forfeiture of the surety if defendant violates *any* condition of his release. *See id.* at 7; Dist. Tr. at 22, 58. The Court could impose additional conditions such as a prohibition on the use of any cellphone and authorized surveillance of all email.

25. *See Ciccone,* 312 F.3d at 542 (holding that a racketeering conspiracy is a crime of vio-

lence if any of the predicate acts are violent in nature, such as extortion).

26. While not specifically charged in the Indictment, the government has described Gotti's role in other murders carried out by members of the Gambino Crime Family during the time that Gotti was its leader or that Gotti has taken credit for. *See* Gov't Mem. at 11–18. The source of this information appears to be one of the government's cooperating witnesses, Michael DiLeonardo ("DiLeonardo"), a former captain in the Gambino Crime Family and for many years Gotti's alleged confidant and right-hand man. *See id.* at 3. Indeed, the government asserts that he is "the highest ranking member of the Gambino Family to cooperate with the government since the defection of Gambino Underboss Salvatore 'Sammy the Bull' Gravano in late 1991." *Id.*

27. In its Memorandum of Law, the government identifies several cooperators in addition to DiLeonardo: Dominick Borghese, a former Gambino soldier who was allegedly in Gotti's crew; Anthony Rotondo, a former captain in the Decavalcante Crime Family; two former Acting Bosses of the Luchese Crime Family; and Sal Vitale, former Underboss of the Bonanno Crime Family. *See id.* at 8 n. 8, 9 n. 12, 12, 17.

ator testimony will be corroborated, in part, by video surveillance showing Gotti's affiliation with known members of the Gambino Crime Family, audiotapes of his conversations with members and associates of the Gambino Crime Family, physical evidence of documents revealing his intimate association with members of the organization and weapons seized from a storage facility used by Gotti,[28] including one gun which he admitted owning, and his guilty plea to a previous indictment charging him with a leadership role in the Gambino Crime Family.[29] If convicted of these crimes, Gotti could face twenty-five to thirty years in custody.[30]

## C. The History and Characteristics of the Defendant

As set forth earlier, the BRA spells out a number of defendant characteristics, only some of which are relevant here. Those of special relevance are defendant's criminal history and past conduct. I have already noted that defendant has a prior racketeering conviction, obtained via defendant's guilty plea, wherein he admitted a leadership role in a racketeering enterprise, which the indictment charged as the Gambino Crime Family. Of greater interest, however, is the phrase "past conduct." In his earlier case, Gotti was originally ordered detained based on danger to the community by Magistrate Judge Mark Fox, and by then-District Judge Barrington Parker.[31] Nevertheless, he was eventually released on bail by Judge Parker, who concluded that the length of pretrial detention, which he expected to be seventeen months, would violate Gotti's right to due process.[32] Gotti was released on very stringent conditions, not unlike those his lawyers propose now.

28. *See id.* at 19 (noting that this search was conducted in the basement of a building owned by Gambino associate Michael McLaughlin, which the government alleges it proved was used by Gotti).

29. *See id.* at 3–4. In his guilty plea, Gotti admitted he was a member of a racketeering enterprise, an association in fact, although not the one charged in the indictment. *See* Guilty Plea at 44 ("I conspired with a group of individuals forming an association in fact."). *See also id.* at 42 (Mr. Shargel, Gotti's attorney: "I made clear earlier that the enterprise we were pleading to was an association in fact and not the enterprise that's titled by the Government."). *But see* Affidavit of Federal Bureau of Investigations Special Agent Gerard Conrad in Support of Applications for Orders Authorizing the Interception of Oral Communications and Visual Non–Verbal Conduct ("Conrad Aff."), Ex. A to Gov't Mem., ¶ 96 ("When my father went to jail, I took responsibility."); Draft Transcript of Intercepted Conversation between Gotti and John Ruggiero, Ex. I to Gov't Mem., at 29 ("When I was really in charge, . . . [n]obody got pinched. . . . Nobody ever got harmed when I was in charge. [19]94, 95, 96, never. . . .").

30. *See* Gov't Mem. at 9.

31. In ordering Gotti detained, Judge Parker made the following findings: "I conclude that a higher degree of danger stems from Mr. Gotti's position of leadership in a criminal organization, the Gambino Crime Family, and his ability to plan, order or supervise criminal activities from that position. It that role he poses a danger at least as much for what he might direct or assist others in doing as for what he might do himself. . . . Furthermore, I do not believe that the danger can be reasonably addressed by the proposed conditions of release." 2/13/98 Transcript of Detention Hearing before Judge Barrington D. Parker, Jr., Ex. L to Gov't Mem., at 21–22.

32. Judge Parker made this determination prior to the Second Circuit's opinion in *United States v. El–Hage*, 213 F.3d 74, 79 (2d Cir. 2000) (approving pretrial detention of more than thirty months in a complex case involving an extensive conspiracy, despite an argument that such a lengthy detention would violate due process). I note that a trial date of August 8, 2005, has been set in this case, resulting in a pretrial detention of eleven months.

■ The defense argues, here, that because the government cannot show that Gotti engaged in any violence during his release on bail, he is no more of a threat to the community now than he was when he was released. Indeed, the defense believes that this argument is dispositive. While I do not agree that it is dispositive, it certainly makes this bail application a closer call than it might otherwise be. One court trusted Gotti not to endanger the community during pretrial release, and there is no proof that he violated that trust. It is therefore imperative that this Court assess whether the circumstances now demand pretrial detention despite his previous release on bail without incident.

On the one hand, Gotti's ability to engage in dangerous conduct is diminished since his previous pretrial release in 1998. Gotti has been incarcerated since October, 1999—in other words, for more than five years. There is no proof that he has run the Gambino Crime Family from his jail cell or ordered any subordinate to engage in any violence. Indeed, the government surreptitiously tape recorded many of his prison visits during those years, both with counsel and with other visitors.[33] Those tapes reveal a man with very ambivalent feelings about his past life. While the government argues that he might have been aware, to some extent, that he was the subject of eavesdropping,[34] I do not credit this argument. A review of the transcripts of these intercepts reveals that Gotti has expressed a real distaste for his past life and associations and a desire to move away from that past and toward a new future outside of organized crime.[35]

On the other hand, the government argues that events since his pretrial release on bail establish that he remains a danger to the community. The government bases this conclusion on: (1) the charges in the pending indictment, of which Judge Parker was unaware at the time Gotti was released; (2) Gotti's alleged breach of the terms of his release on the basis of information provided by DiLeonardo, that Gotti sent him messages regarding extortion victims through John Ruggiero, an organized crime associate, and through co-defendants or their counsel with whom Gotti met at co-defendant meetings; (3) a conversation with John Ruggiero while Gotti was serving his sentence, in which he instructed Ruggiero to encourage a witness to change his testimony before a grand jury; and (4) an alleged attempt to intimidate DiLeonardo by meeting with DiLeonardo's then sixteen-year-old son.

I have reviewed each of these allegations with care. I am not persuaded that Gotti's meeting with DiLeonardo's son was in any way an effort to intimidate a government witness. Nor am I convinced that Gotti's conversation with Ruggiero was an attempt to obstruct justice by influencing the grand jury testimony of a witness. Finally, there is no credible proof that Gotti violated his bail conditions by sending messages, or if messages were indeed sent, the government does not proffer that these messages resulted in harm or threatened harm to anyone.[36]

33. *See* Conrad Aff.

34. *See* Gov't Mem. at 36–39.

35. At the same time, on a few isolated occasions, he reverts to his admitted role as a leader of a racketeering enterprise, claiming he will beat his uncles "like a cheap two dollar French hooker" should he find them in the same jail as himself, and instructing a visitor to deliver a message to the same uncles that they had better make certain payments due to his mother or else Gotti would deal with the problem after his release from prison. *See* Conrad Aff. ¶¶ 55, 92.

36. Indeed, John Ruggiero has submitted an affidavit in these proceedings stating that "during the period that John A. Gotti was

Nonetheless, the government's first point is crucial. The information regarding this defendant's danger to the community is far stronger than the information presented to Judge Parker years ago.[37] By the defendant's own admission he was, at one time, a leader of a racketeering enterprise.[38] It is that same enterprise that is now charged with violent acts, many of which occurred at the time that he was its leader. His taped conversations while in custody also contain admissions of his former role.[39] Even a *former* leader would have the ability and the contacts to engage in violence if he thought it was in his self interest. In addition, the evidence against him is now ten times greater than it was at the time Judge Parker made his bail decision [40]—if only because there are ten cooperators prepared to testify against Gotti.[41] According to Gotti himself, DiLeonardo was a close associate and even a

friend.[42] Such a man is surely in a position to testify as to what the defendant did and what he said at the time of the events alleged in this indictment. The fact that this man and nine others are now prepared to testify against Gotti in regard to at least three attempted murders, none of which were before Judge Parker, is in itself clear and convincing evidence that this defendant is a danger to the community.[43]

## D. The Nature and Seriousness of the Danger Posed by Gotti's Release

The final factor, the nature and seriousness of the danger to any person that would be posed by Gotti's release is, by definition, speculative. This factor essentially directs the court to predict, based on an assessment of the charges against the defendant, and the defendant's history and

---

released on bail ... until he returned to prison following his guilty plea, I had no contact with him—either directly or through an intermediary—nor did I transmit any communications between him and Michael DiLeonardo." Affidavit of John Ruggiero, Ex. B to 12/14/04 Letter from Jeffrey Lichtman, Gotti's counsel, to the Court.

37. *See* Dist. Tr. at 26, 40.

38. At the time Judge Parker released Gotti on bail, the defendant denied that he was a "made member" of any organized crime family, much less a leader. Indeed, the defense offered the published statement of Joseph Coffey, a special investigator with the New York State Attorney General's Organized Crime Task Force, to the effect that Gotti was not and could not have been a made member of the Gambino Crime Family. *See* 7/21/98 Letter from Gerald L. Shargel, Gotti's counsel, to the Honorable Barrington D. Parker, Jr., Ex. N to Gov't Mem., at 4–5.

39. *See supra* note 29.

40. *See* Dist. Tr. at 41 (AUSA McGovern speaking of the 1998 indictment: "I believe there was only one cooperating witness at that

time, a former Gambino soldier who was available to be called.").

41. *See supra* note 27.

42. *See* Conrad Aff. ¶¶ 72, 137.

43. *See, e.g., Ciccone*, 312 F.3d 535 (denying bail for alleged acting or actual organized crime boss charged with supervising multiple acts of extortion, illegal gambling, loansharking, money laundering, and witness tampering); *United States v. Ferranti*, 66 F.3d 540 (2d Cir.1995) (denying bail for defendant charged with conspiracy to commit arson, arson resulting in death, witness tampering and mail fraud); *United States v. Orena*, 986 F.2d 628 (2d Cir.1993) (overturning District Court order releasing defendants charged with RICO violations based on predicate acts of murder, conspiracy to murder, loansharking and illegal possession of weapons); *United States v. Colombo*, 777 F.2d 96 (2d Cir. 1985) (overturning District Court order releasing defendant charged with operating a "crew" that committed murder, robbery, narcotics violations, arson, extortion, threats, assaults, illegal gambling, bribery, interstate theft and transportation of stolen goods, extortion, and mail and wire fraud).

characteristics, whether he would pose a harm to the community at large or to any specific individuals. This is clearly a subjective determination. Based on all of the evidence in this record, I conclude that if Gotti were released, even on stringent conditions, there is a real risk that he might attempt to persuade potential witnesses, either through threats or promises, not to testify against him or to testify in a benign manner. I base this conclusion on credible proof that both this defendant and the organization in which he allegedly had a leadership role have engaged in such conduct in the past.

The government has offered proof that Gotti ordered the attempted murder of Curtis Sliwa merely because he criticized the Gotti family.[44] If he would take such steps to silence a critic, it must be presumed that he would take the same steps to silence a witness. The government has also proffered evidence that Gotti discussed the need to kill members of Salvatore Gravano's crew because they "could not be trusted,"[45] and discussed the need to kill Joseph Watts, whom he suspected of being a cooperator.[46] In addition, in 1998, "source information" told the government that Gotti had been overheard in his jail cell " 'discussing his desire to kill one of his co-defendants.' "[47] Finally, members of the Gambino Crime Family have previously engaged in efforts to intimidate witnesses.[48] Given the allegation of Gotti's long time leadership role in the Gambino Crime Family, it is surely relevant that members of that family have not hesitated to engage in witness tampering when they deemed it necessary.

## IV. CONCLUSION

Based on the totality of the circumstances, I find that there is clear and convincing evidence that Gotti poses a danger to those who would testify against him or to those who thwart his will. While he may no longer be a leader of an organized crime family, or the head of any crew, he may well maintain sufficient connections to convince others who were once loyal to him to act at his behest. This is too great a risk to incur. For these reasons, the decision of the magistrate judge is affirmed, and Gotti is ordered detained pending trial.

SO ORDERED.

---

44. The government proffers both the testimony of DiLeonardo and of another unnamed cooperator with respect to Gotti's role in this attempted murder. DiLeonardo alleges that he attended a meeting with Gotti, Gambino Captain Nicky Corozzo, and Gambino associates Joseph D'Angelo and Michael Yannotti wherein Gotti advised the others, " '[w]e've got a piece of work to do' " and then expressed his displeasure with Sliwa's personal attacks on the Gotti family and "gave a direct order to D'Angelo and Yannotti to attack Sliwa a second time." Gov't Mem. at 16. According to the government D'Angelo advised an unnamed cooperator that the "attack on Sliwa was done in response to a direct order from Gotti, Jr." *Id.* at 17.

45. *Id.* at 12–13.

46. *See id.* at 18.

47. 2/2/98 Transcript of Detention Hearing before Magistrate Judge Mark D. Fox, Ex. K to Gov't Mem., at 9–14.

48. *See, e.g., Ciccone,* 312 F.3d at 537 (accusing a member of the Gambino Crime Family of engaging in witness tampering); *United States v. Gotti,* 776 F.Supp. 666, 671–72 (E.D.N.Y.1991) (underboss of Gambino Crime Family detained based, in part, on finding "that witnesses had been tampered with in other cases involving high ranking members of this 'family' ").