UNITED STATES of America,
Appellee,

v.

Dominick CIRILLO, Defendant–Appellant.

Docket No. 05–3095.

United States Court of Appeals,
Second Circuit.

Sept. 21, 2005.

Lawrence Mark Stern, New York, New York, for Appellant.

Katya Jestin, Assistant United States Attorney (Peter A. Norling, Taryn A. Merkl, Assistant United States Attorneys, on the brief), for Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, Brooklyn, New York, for Appellee.

Present: MINER, RAGGI, Circuit Judges, and KARAS, District Judge.[1]

**SUMMARY ORDER**

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the June 9, 2005 oral ruling of the district court declining to reconsider its order of detention dated April 22, 2005, and entered on April 29, 2005, is hereby AFFIRMED.

Dominick Cirillo is presently indicted on substantive and conspiratorial charges of racketeering for his participation in an enterprise known as the Genovese organized crime family of La Cosa Nostra. After a bail hearing at which the government established *inter alia* Cirillo's role as the

1. The Honorable Kenneth M. Karas, of the United States District Court for the Southern District of New York, sitting by designation.

acting boss of the Genovese family, Magistrate Judge Levy, on April 14, 2005, recommended, and Judge Townes on April 22, 2005, ordered, Cirillo's detention pending trial on the ground that Cirillo was charged with violent crimes, specifically extortion predicates for racketeering, *see* 18 U.S.C. § 1951(b)(2), and clear and convincing evidence established that no condition or combination of conditions short of detention would assure the safety of the community, *see* 18 U.S.C. § 3142(e), (f); *United States v. Ciccone,* 312 F.3d 535, 542 (2d Cir.2002). Cirillo did not appeal the April 22 order. Instead, he sought reconsideration, noting particularly his ill health and need for dental work. The district court addressed these concerns at a June 9, 2005 status conference. It specifically denied reconsideration of bail, noting defendant's failure to point to any law or facts overlooked by the court at the time it initially ordered Cirillo's detention, or to any clear error of law or manifest injustice. *Cf. Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,* 322 F.3d 147, 167 (2d Cir. 2003) (noting that district court may not usually reconsider its decisions "unless there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice" (internal quotation marks omitted)). Nevertheless, the court commenced a series of conferences with the parties to ensure Cirillo's receipt of adequate health care while in custody.

Cirillo now appeals the district court's June 9, 2005 ruling, as well as "all the prior papers and proceedings ... denying defendant bail and medical and dental treatment." Amended Notice of Appeal, June 16, 2005. Plainly, only the appeal from the June 9, 2005 ruling is timely. *See* Fed. R.App. P. 4(b)(1)(A) ("In a criminal case, a defendant's notice of appeal must be filed in the district court within 10 days after ... (i) the entry of either the judgment or the order being appealed."). No matter. The record convincingly demonstrates that, whether Cirillo's challenge to detention is reviewed directly or as a denial of reconsideration, there is no merit to his general claim that the government failed to establish his danger to the community or his specific claim that health concerns warrant release on bail. We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision.

On an appeal from an order of detention, we apply deferential "clear error" review to "the historical facts upon which a district court relies in determining whether a defendant poses a risk to the community. Our scope of review is slightly broader with respect to the 'ultimate determination' that a defendant does, or does not, present a risk to the citizenry." *United States v. Ferranti,* 66 F.3d 540, 542 (2d Cir.1995) (citations omitted).

■ The district court's factual finding that the Genovese crime family routinely employs violence to further its interests and that Cirillo is the acting boss, or a "captain" with a leadership role, of this crime family was amply supported by (1) the testimony of an FBI agent with particular expertise in the Genovese family; (2) corroborative recorded conversations among organized crime members; (3) a list of potential new members for the Genovese family recovered from Cirillo's home on the date of his arrest; (4) and the government's proffer of extensive anticipated trial evidence, including testimony from seven cooperating witnesses, a host of surveillance photographs, and transcripts of recorded conversations.

Although Cirillo challenges the reliability and weight of this evidence, we are not

convinced. Certainly, the government was entitled to present some of its evidence by proffer, *United States v. LaFontaine,* 210 F.3d 125, 131 (2d Cir.2000), and the record reveals Magistrate Judge Levy's specific recognition of the responsibility carefully to evaluate the reliability of proffered evidence. To the extent Cirillo notes that one of the government's proffered trial witnesses is an individual whose testimony in another case this court described as "conclusory, uncorroborated, biased, and illogical," *United States v. Bruno,* 383 F.3d 65, 84 (2d Cir.2004), we note that our criticism focused on the witness's testimony as to the motive for certain conduct, not his overall veracity. In any event, even without the proffered testimony of this witness, the government's remaining proof of Cirillo's leadership role in the Genovese family was sufficiently extensive to be deemed clear and convincing.

This court has affirmed the detention of the leaders of organized crime enterprises on the ground that their continued liberty presents a risk to the public not only from their own violent activities but from those of subordinates whom they supervise. *See United States v. Ciccone,* 312 F.3d at 543 (affirming denial of bail based on government's clear and convincing showing that the defendant headed the Gambino Crime family: "[B]ased on his activities as well as the activities of those he supervised and controlled, ... there were no conditions or combinations of conditions that would adequately and reasonably ensure the safety of the community."). Magistrate Judge Levy nevertheless recognized that there is no *per se* rule requiring the detention of organized crime leaders; rather, an individualized determination of the quality and quantity of the evidence of danger is appropriate. Cirillo argues that such an assessment in his case would reveal that the predicate acts were all sufficiently in the past to preclude a finding of present dan-

ger. We disagree. The list of proposed Genovese members found on Cirillo's kitchen table was sufficient proof that the violent enterprise was actively reinvigorating itself and that Cirillo was directly involved in this process. In sum, it was not error for the district court to order Cirillo's detention as a danger to the community.

■ Neither Cirillo's heart condition nor his dental needs altered the fact that his danger to the community required detention. This court has ruled that even the strictest home confinement conditions cannot substitute for actual detention to safeguard the public from the danger presented by the leaders of organized crime families routinely involved in violent criminal activities. *See generally id.* As Judge Townes recognized, Cirillo is, nevertheless, entitled to adequate health care while incarcerated. The record indicates that the district court has carefully inquired into and monitored Cirillo's health care. Because no ruling by the court with respect to health care—other than its failure to release Cirillo on this ground—is challenged on this appeal, we do not pursue the matter further.

The June 9, 2005 ruling of the district court, denying reconsideration of its April 22, 2005 detention order, is hereby AFFIRMED.